PEOPLE v ERICKSEN

Docket No. 288496. Submitted April 6, 2010, at Lansing. Decided April 15, 2010, at 9:00 a.m.

An Alpena Circuit Court jury convicted Chad J. Ericksen of assault with intent to commit murder. The court, John F. Kowalski, J., sentenced defendant as a fourth-offense habitual offender to life imprisonment, and defendant appealed.

The Court of Appeals *held*:

1. The elements of assault with intent to commit murder are (1) an assault (2) with an actual intent to kill, (3) which, if successful, would make the killing murder. Circumstantial evidence and the reasonable inferences it permits are sufficient to support a conviction provided the prosecution meets its burden of proof beyond a reasonable doubt.

2. Taken as a whole and viewed in a light most favorable to the prosecution, the evidence presented, together with the reasonable inferences that may be drawn from that evidence, was sufficient to support defendant's conviction. With regard to defendant's intent, the evidence established that defendant secreted a knife before leaving with companions to confront the victim and told his companions that he had "stuck" the victim five times, which a jury could reasonably have interpreted as an admission that he knowingly stabbed the victim several times. Defendant's intent could also be inferred from the nature, extent, and location of the wounds.

3. While defendant challenged the credibility of testimony by his companions and codefendants, questions of credibility are for the trier of fact to resolve. The trial court specifically instructed the jury to examine accomplices' testimony carefully and consider it more cautiously than that of other witnesses, and jurors are presumed to follow the court's instructions.

4. The instances of prosecutorial misconduct that defendant alleged did not deprive him of a fair trial. During opening statement, the prosecutor attempted to describe the victim's anticipated testimony, and while the victim did not testify, other witnesses did describe the victim's condition and the surgeries he

required. The prosecutor's statement in closing argument that the victim was in a wheelchair was conclusory given the evidence presented, but it was brief, there was testimony that the victim's injuries necessitated amputation of his legs, and the trial court instructed the jurors not to let sympathy influence their decisions. The statement was not so inflammatory as to have prejudiced defendant. The prosecutor did not interject his personal beliefs into the case. Moreover, taken in context, the prosecutor's argument in closing that it would not be reasonable for the jury to find defendant guilty of a lesser included offense was a request by the prosecutor for the jury to convict defendant because the evidence showed an intent to commit murder. Finally, the prosecutor did elicit testimony from a police detective that the trial testimony of one of defendant's companions was consistent with an earlier police interview, but while a witness cannot properly comment on another witness's credibility, defendant opened the door to the question through attempts to undermine the companion's credibility by identifying inconsistencies in his statements to the police.

5. While defendant argued that the trial court based his sentence on facts not proved beyond a reasonable doubt, in violation of *Blakely v Washington*, 542 US 296 (2004), *Blakely* does not apply to Michigan's indeterminate sentencing scheme.

6. The trial court properly scored offense variable 4 (psychological injury to victim). MCL 777.34(2) requires the court to assess 10 points if the victim sustained serious psychological injury that may require professional treatment, although treatment need not actually have been sought.

7. The trial court properly scored offense variable 19 (interference with the administration of justice). Interfering or attempting to interfere with the administration of justice includes acts that constitute obstruction of justice. Providing a false name to the police may constitute an interference with the administration of justice. In this case, defendant asked one of his companions to dispose of the knife he used to stab the victim and asked others to lie about where defendant was when the crime was committed. These were attempts to create a false alibi and mislead the police investigation and under MCL 777.49(c), were attempts to interfere with the administration of justice.

8. Defendant argued that because he had not previously been charged with assault with intent to commit murder, the trial court should not have considered a statement in his presentence investigation report indicating that he had a history of similar offenses.

Similar does not mean identical, and the stabbing incidents described in the report were similar.

9. Defendant was entitled to 282 days' jail credit for time served in jail before sentencing.

Affirmed; remanded for correction of judgment of sentence.

1. Criminal Law — Assault with Intent to Commit Murder — Elements of Assault with Intent to Commit Murder — Intent to Kill — Circumstantial Evidence — Inferences from Circumstantial Evidence.

The elements of assault with intent to commit murder are (1) an assault (2) with an actual intent to kill, (3) which, if successful, would make the killing murder; the defendant's intent can be inferred from any facts in evidence, including the nature, extent, and location of any wounds inflicted on the victim (MCL 750.83).

2. Sentences — Sentencing Guidelines — Offense Variables — Victims — Psychological Injury to Victims.

A sentencing court must assess points under offense variable 4 of the sentencing guidelines if the victim sustained serious psychological injury that may require professional treatment; treatment, however, need not actually have been sought for these points to be assessed (MCL 777.34).

3. Sentences — Sentencing Guidelines — Offense Variables — Interference with the Administration of Justice.

A defendant's attempts to create a false alibi, mislead police investigators, or divert suspicion away from himself or herself and onto others constitute attempts to interfere with the administration of justice for purposes of scoring offense variable 19 of the sentencing guidelines (MCL 777.49).

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, *Ed Black*, Prosecuting Attorney, and *Andrea Christensen*, Assistant Attorney General, for the people.

*Smith & Brooker, P.C.* (by *George B. Mullison*), and Chad J. Ericksen, *in propria persona*, for defendant.

Before: Davis, P.J., and Donofrio and Stephens, JJ.

PER CURIAM. Defendant appeals as of right his jury trial conviction of assault with intent to commit murder, MCL 750.83. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to serve a life sentence. Because the prosecution presented sufficient evidence from which a jury could convict defendant beyond a reasonable doubt and defendant's claims of prosecutorial misconduct, ineffective assistance of counsel, and sentencing error are without merit, we affirm defendant's conviction and life sentence. We remand only for ministerial correction of defendant's judgment of sentence to include 282 days of jail credit.

I

Before being attacked, the victim, Ervin Ritthaler, Jr., had been involved in an altercation with the sister of one of defendant's friends. Defendant and two other men confronted the victim about the earlier incident. The confrontation soon became violent, and defendant stabbed Ritthaler several times in the back with a knife he had secreted on his person. The wounds resulted in a cascade of severe medical complications for Ritthaler, including multiple organ failures, cardiac arrest, brain injury, and, ultimately, amputation of both of his legs below the knee.

II

Defendant first argues on appeal that his conviction cannot stand because the prosecution failed to present sufficient evidence at trial. We review de novo a challenge on appeal to the sufficiency of the evidence. *People v Hawkins*, 245 Mich App 439, 457; 628 NW2d 105 (2001). The elements of assault with intent to commit murder are "(1) an assault, (2) with an actual intent to

kill, (3) which, if successful, would make the killing murder." *People v Brown*, 267 Mich App 141, 147-148; 703 NW2d 230 (2005) (quotation marks and citations omitted). We examine the evidence in a light most favorable to the prosecution, resolving all evidentiary conflicts in its favor, and determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond reasonable doubt. *Hawkins*, 245 Mich App at 457; *People v Terry*, 224 Mich App 447, 452; 569 NW2d 641 (1997).

Defendant specifically asserts that because the prosecution's case rested extensively on circumstantial evidence, he could have been convicted only if that evidence proved the prosecution's theory of guilt with "impelling certainty." This is a misstatement of the law. Circumstantial evidence and the reasonable inferences it permits are sufficient to support a conviction, provided the prosecution meets its constitutionally based burden of proof beyond a reasonable doubt. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

Defendant also argues that the prosecution presented insufficient evidence to establish that he had the requisite specific intent. The evidence at trial established that defendant secreted a knife before leaving with his companions to confront Ritthaler. In addition, defendant told his companions that he had "stuck [Ritthaler] five times." A trier of fact could reasonably have interpreted this statement as an admission that he knowingly stabbed the victim many times. The medical evidence showed that Ritthaler's right back had four knife wounds. Defendant's intent could be inferred from any facts in evidence, including the nature, extent, and location of these wounds. *People v Mills*, 450 Mich 61, 71; 537 NW2d 909 (1995); *People v Unger*, 278 Mich App 210, 223, 231; 749 NW2d 272 (2008). This Court

has consistently observed that "[b]ecause of the difficulty of proving an actor's state of mind, minimal circumstantial evidence is sufficient." *People v McRunels*, 237 Mich App 168, 181; 603 NW2d 95 (1999). Here, the evidence was more than minimal and clearly demonstrated that defendant acted with the requisite intent.

Defendant also challenges the credibility of the testimony of his companions and codefendants, arguing that they were not credible because each man received a favorable plea deal in exchange for his testimony. Both men, however, acknowledged their respective plea agreements during their testimony. Not only does this Court scrupulously leave questions of credibility to the trier of fact to resolve, *People v Williams*, 268 Mich App 416, 419; 707 NW2d 624 (2005), but the jury was also specifically instructed to "examine an accomplice's testimony closely and be very careful about accepting it" and to consider it "more cautiously than you would that of an ordinary witness." "It is well established that jurors are presumed to follow their instructions." *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998).

Defendant also highlights a statement the trial court made at sentencing to the effect that it did not appear that defendant intended the extent of the injury sustained by Ritthaler. The record reveals that the trial court actually stated that it was "guessing" that the injuries sustained were "more serious than [defendant] ever intended . . . ." The court's conjecture regarding defendant's motivation is, by its very nature, pure speculation, as opposed to the jury's determination of guilt beyond a reasonable doubt.

In sum, taken as a whole and viewed in a light most favorable to the prosecution, the evidence presented

below, together with the reasonable inferences that may be drawn from that evidence, was sufficient to support defendant's convictions. *Hawkins*, 245 Mich App at 457.

III

Defendant next argues that he was denied a fair trial when the prosecutor engaged in numerous instances of misconduct. See *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). However, because a timely objection could have cured any of the alleged errors, we review defendant's allegations of prosecutorial misconduct for plain error affecting substantial rights. *People v Thomas*, 260 Mich App 450, 453-454; 678 NW2d 631 (2004).

Defendant first asserts that the prosecutor engaged in misconduct when he stated during his opening statement that Ritthaler had many health problems stemming from the attack, and then stated during closing argument that Ritthaler was confined to a wheelchair. Defendant contends that these comments were improper because they were irrelevant, unduly prejudicial, intended to elicit the jury's sympathy for the victim, and, in relation to the second statement, constituted facts not in evidence.

The record reveals that the prosecutor actually stated during his opening statement that although Ritthaler had no memory of the night he was attacked, "he can tell you about his state of health today, and he can testify to a number of other aspects of information which will be useful." When read in context with the rest of the prosecutor's opening statement, it is apparent that the prosecutor was attempting to describe Ritthaler's anticipated testimony. While Ritthaler ultimately did not testify, his treating physicians did testify and described Ritthaler's condition on being brought

into the emergency room and the multiple surgeries he required before he was transported to another hospital for further treatment. This evidence was relevant to all elements of the crime and was congruent with the prosecutor's opening statement.

The prosecutor's statement during closing argument that Ritthaler was now in a wheelchair was conclusory given the record evidence. "[A] prosecutor may not make a statement of fact to the jury that is unsupported by the evidence . . . ." *People v Schumacher*, 276 Mich App 165, 178; 740 NW2d 534 (2007). While the prosecutor did assert during opening statement that Ritthaler's lower legs were eventually amputated because of the damage caused by the attack, there was no sworn testimony from a witness during trial that Ritthaler was wheelchair-bound. There is also no indication from the record before us that Ritthaler was in the courtroom or that any documentary evidence was admitted that disclosed that Ritthaler was confined to a wheelchair. However, to the extent that the statement might be considered improper, it constituted only a brief portion of the closing argument, which included a lengthy and detailed discussion of the evidence. Moreover, there was testimony that the victim had to have his lower legs amputated, and without lower legs, it is not a stretch to describe the victim as wheelchair-bound. When viewed as part of the closing argument as a whole, the statement does not appear so inflammatory as to have prejudiced defendant. Additionally, the trial court instructed the jury to consider only the evidence and clarified that the attorneys' statements were not evidence. Further, the trial court instructed the jury that it must not let sympathy influence its decision. "Jurors are presumed to follow their instructions, and

instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003).[1]

Defendant also argues that the prosecutor interjected his personal beliefs into the case when he stated during his opening statement that defendant's companions went to see Ritthaler in order to talk to him but defendant had a different intent. Rather than offering his personal beliefs about defendant's guilt, the prosecutor was simply summarizing the anticipated testimony of defendant's companions, as well as providing a fair view of what the evidence would show. Opening statement is the appropriate time to state the facts that will be proved at trial. *People v Moss*, 70 Mich App 18, 32; 245 NW2d 389 (1976). Defendant has not shown error.

Defendant also argues that the prosecutor engaged in misconduct when he argued during closing argument that it would not be reasonable to find defendant guilty of the lesser included offense of assault with intent to commit great bodily harm less than murder or assault with a dangerous weapon. However, when read in context of the entire closing argument, it is apparent that the prosecutor was asking the jury to convict

---

[1] Defendant also claims that defense counsel's failure to object to the prosecutor's wheelchair reference amounted to ineffective assistance of counsel. Defense counsel's failure to object to the prosecutor's wheelchair reference was likely a strategic decision. See *People v Bahoda*, 448 Mich 261, 287 n 54; 531 NW2d 659 (1995). Counsel could have reasonably believed that by raising a procedural objection, defendant would be showing a detrimental lack of sympathy for the victim, especially considering the fact that the victim was a double amputee without lower legs. In any event, defendant has not established that but for the alleged error, a different result was likely or that the proceedings were fundamentally unfair or unreliable. *People v Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2001). Therefore, defendant's claim of ineffective assistance of counsel in this regard is wholly without merit.

defendant because the evidence showed that defendant inflicted "multiple stabbings in the vital area," therefore establishing the element of intent to commit murder.

Defendant's final claim of prosecutorial misconduct relates to testimony elicited from an Alpena Police Department detective that the trial testimony of one of defendant's companions was consistent with an earlier police interview. While a witness cannot properly comment on the credibility of another witness, *People v Buckey*, 424 Mich 1, 17; 378 NW2d 432 (1985), defendant opened the door to the question when he attempted to undermine his companion's credibility by pointing out that his statements to police were not consistent, see *People v Verburg*, 170 Mich App 490, 497-498; 430 NW2d 775 (1988). Again, defendant has not shown error.

Because defendant has not shown error with regard to any of his assignments of prosecutorial misconduct, his concomitant arguments that he was denied due process when the trial court "failed to control the prosecutor" or that he was denied effective assistance of counsel when trial counsel failed to object to the prosecutor's actions also fail. Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel. *People v Snider*, 239 Mich App 393, 425; 608 NW2d 502 (2000). And after reviewing the record, we are confident that the trial court satisfied its duty to ensure that defendant received a fair trial. See *People v Ullah*, 216 Mich App 669, 674; 550 NW2d 568 (1996).

IV

Defendant next challenges his life sentence. He first argues, on the basis of *Blakely v Washington*, 542 US

296; 124 S Ct 2531; 159 L Ed 2d 403 (2004), and its progeny, that his sentence is constitutionally barred for the reason that the trial court engaged in impermissible fact-finding and based his sentence on facts that had not been proved beyond a reasonable doubt to a jury. But our Supreme Court has clearly and consistently held that *Blakely* does not apply to Michigan's indeterminate sentencing scheme, and defendant's argument is thus without merit. See *People v McCuller*, 479 Mich 672, 683; 739 NW2d 563 (2007); *People v Drohan*, 475 Mich 140, 164; 715 NW2d 778 (2006); *People v Claypool*, 470 Mich 715, 730 n 14; 684 NW2d 278 (2004).

Defendant next argues that the trial court improperly scored offense variables (OVs) 4 and 19 for reasons besides those related to the principle underlying *Blakely*.[2] "A sentencing court has discretion in determining the number of points to be scored, provided that evidence of record adequately supports a particular score." *People v Hornsby*, 251 Mich App 462, 468; 650 NW2d 700 (2002). "This Court reviews a sentencing court's scoring decision to determine whether the trial court properly exercised its discretion and whether the record evidence adequately supports a particular score." *People v McLaughlin*, 258 Mich App 635, 671; 672 NW2d 860 (2003). To the extent that a challenge to the trial court's scoring of a variable involves a question of statutory interpretation, this Court reviews de novo questions of statutory interpretation. *People v Osantowski*, 481 Mich 103, 107; 748 NW2d 799 (2008).

With regard to OV 4, a sentencing court must assess 10 points under OV 4 if the victim sustained serious psychological injury that may require professional treatment, although treatment need not actually have

---

[2] Defendant accepted the scoring of the sentencing guidelines at the time of sentencing, but did file a subsequent motion for resentencing.

been sought in order for these points to be assessed. MCL 777.34(2). Defendant's argument seems to disregard that portion of the statute stating that actual psychological treatment is not a necessary prerequisite to the scoring of points. The presentence investigation report (PSIR) indicated that Ritthaler suffered from "depression" and that his "personality" had changed as of a result of his continuing poor heath following the assault and amputations. This was sufficient evidence to uphold the scoring decision. *Hornsby*, 251 Mich App at 468.

With regard to OV 19, MCL 777.49(c) requires that the sentencing court assess 10 points if "[t]he offender otherwise interfered with or attempted to interfere with the administration of justice[.]" Defendant challenges the trial court's assessment of 10 points, arguing that his conduct of leaving the scene of the crime and leaving the state did not constitute interference with the administration of justice because he was not actually being chased by police when he left. The prosecution responds that additional conduct on the part of defendant constituted interference with the administration of justice under the language of the statute. The prosecution specifically argues that defendant attempted to impede the investigation of the crime by wiping the knife down, asking one of his companions to dispose of it, and asking others to lie about his whereabouts on the night of the crime.

The primary rule for determining legislative intent is that statutory language is to be strictly construed according to its plain and ordinary meaning. *People v Noble*, 238 Mich App 647, 658-659; 608 NW2d 123 (1999). If the meaning of a statute is clear and unambiguous, further construction is neither required nor permitted. *People v Davis*, 468 Mich 77, 79; 658 NW2d

800 (2003). Interfering or attempting to interfere with the administration of justice includes acts that constitute obstruction of justice, but is not limited to such acts. *People v Barbee*, 470 Mich 283, 286-287; 681 NW2d 348 (2004). Providing a false name to the police may constitute an interference with the administration of justice that can be scored under OV 19. *Id*. at 288. In this case, there was evidence that defendant asked one of his companions to dispose of the knife he used to stab the victim and asked others to lie about his whereabouts during the night of the crime. Clearly, defendant's attempt to hide or dispose of the weapon in conjunction with his encouragement of others to lie about where he was at the time of the stabbing was a multifaceted attempt to create a false alibi and mislead the police. His actions ultimately constituted fabrications that were self-serving attempts at deception obviously aimed at leading police investigators astray or even diverting suspicion onto others and away from him. Unmistakably, defendant's actions were attempts to interfere with the administration of justice as contemplated by the plain language of MCL 777.49(c), and the trial court did not abuse its discretion by assessing 10 points for OV 19.[3]

We also reject defendant's attendant argument that he was denied effective assistance of counsel when his trial counsel agreed that the trial court had properly

---

[3] We recognize that our Supreme Court has explained that, as a general matter, offense variables should not be scored on the basis of acts occurring after the completion of a crime unless the applicable offense variable statute otherwise provides. *People v McGraw*, 484 Mich 120, 122, 135; 771 NW2d 655 (2009). However, our Supreme Court's directive in *Barbee*, being more specific and applicable, is controlling. See *Crane v Reeder*, 22 Mich 322, 334 (1871); *Darmstaetter v Moloney*, 45 Mich 621, 624; 8 NW 574 (1881); *Wayne Co Prosecutor v Wayne Circuit Judge*, 154 Mich App 216, 221; 397 NW2d 274 (1986).

scored the OVs. Again, failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel. *Snider*, 239 Mich App at 425. Defendant is not entitled to resentencing.

V

Defendant next argues that the trial court erred by refusing to strike certain information from the PSIR. Defendant first takes issue with a statement contained in the PSIR that he "has a history of offenses similar to the current conviction." Defendant asserts that because this instance is the first in which he was charged with assault with intent to murder, the other conduct listed in the PSIR was insufficient to qualify as similar to the conduct that resulted in the current conviction. The term "similar" is defined by the *Random House Webster's College Dictionary* (1997) as "having a likeness or resemblance, [especially] in a general way[.]" The definition does not require that each occurrence be identical to the others or that each circumstance could be charged under the same criminal statute.

The "Criminal Justice" section of defendant's PSIR reveals that in 1997 defendant was involved in a stabbing outside a bar and that he was involved in another incident involving a knife in 1998, when he threatened two witnesses to the 1997 incident. The final charge in both of these incidents was assault with intent to commit great bodily harm less than murder, which is a necessarily included lesser offense of assault with intent to murder. *Brown*, 267 Mich App at 150-151 (observing that "the elements of assault with intent to do great bodily harm less than murder are completely subsumed in the offense of assault with intent to commit murder"). Further, the PSIR contained a reference to another, uncharged incident that occurred in

1997 in which defendant stabbed an acquaintance at a rest stop in Genesee County.

Finally, defendant asserts that the trial court should not have considered information related to his prior offenses when the information had not been proved beyond a reasonable doubt before a jury. To the extent that this argument rings of *Blakely*, it fails, as we discussed earlier in part III. In any event, it is well established that a PSIR may include information that would not be admissible at trial, including information about prior convictions as well as other criminal activity allegedly committed by the defendant. *People v Fleming*, 428 Mich 408, 418; 410 NW2d 266 (1987).

We note that defendant is entitled to 282 days' jail credit for time served in jail before sentencing. See MCL 769.11b. Jail credit was not included in the judgment of sentence.

VI

In sum, defendant's claims that there was insufficient evidence to support his conviction, that he was denied a fair trial because of prosecutorial misconduct, that his sentences are invalid and that he is entitled to resentencing, that he was denied effective assistance of counsel at trial, that the trial court denied him a fair trial, and that the trial court improperly considered inaccurate information in his PSIR all fail, and we affirm defendant's conviction and life sentence.

Defendant's conviction and life sentence are affirmed. We remand this case to the trial court for ministerial correction of the judgment of sentence to include 282 days' jail credit. We do not retain jurisdiction.