# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
January 15, 2015

Plaintiff-Appellee,

v

No. 317218
Wayne Circuit Court
LC No. 12-010749-FC

DAVID LAVALE HAIRSTON,

Defendant-Appellant.

Before: FORT HOOD, P.J., and HOEKSTRA and O'CONNELL, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of first-degree felony murder, MCL 750.316(1)(b), first-degree child abuse, MCL 750.136b(2), third-degree child abuse, MCL 750.136b(5), and two counts of torture, MCL 750.85(1). Defendant was sentenced to life without parole for the first-degree felony murder conviction, five to 15 years' imprisonment for the first-degree child abuse conviction, one to two years' imprisonment for the third-degree child abuse conviction, and 18 to 40 years' imprisonment for each of the two torture convictions. Because there was no plain error in the admission of expert medical testimony pertaining to the cause and manner of the victim's injuries and death, and defense counsel was not ineffective for failing to object to this evidence, we affirm.

Defendant's convictions arise from the death of a six-year-old girl, AJ, the daughter of defendant's friend, April Foster.[1] The evidence at trial established that defendant and Foster subjected AJ and her sister to long term physical abuse and neglect, including a failure to seek medical treatment for AJ when warranted. AJ then died as a result of "bilateral bronchial pneumonia associated with neglect and abusive injuries." Specifically, at trial, an expert, Dr. Allecia Wilson, explained that AJ's extensive physical injuries and her history of neglect left her in a weakened physical state which prevented her body from fighting off the pneumonia. Dr. Wilson opined that AJ's numerous physical injuries were abusive-type injuries inflicted by another person and that, consequently, the manner of death was homicide.

---

[1] For her involvement in AJ's abuse and death, Foster was tried jointly with defendant and, like defendant, she was convicted of first-degree felony murder, first-degree child abuse, third-degree child abuse, and two counts of torture.

On appeal, defendant contends that the trial court erred in admitting expert testimony regarding whether the victim, AJ, suffered child abuse. Specifically, defendant asserts expert testimony to the effect that AJ suffered physical abuse and neglect improperly addressed an ultimate issue of fact which should have been left to the jury. Further, defendant contends that his defense counsel was ineffective for failing to object to this "ultimate issue" testimony.

Defendant failed to offer a timely and specific objection at trial to the expert testimony in question, meaning his claim is unpreserved. MRE 103(a)(1); *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). Because this issue is unpreserved, our review is for plain error affecting substantial rights. *People v Coy*, 258 Mich App 1, 12; 669 NW2d 831 (2003).

The admission of expert testimony is governed by MRE 702, which provides:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

"Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." MRE 704. See also *People v Smith*, 425 Mich 98, 106; 387 NW2d 814 (1986). For example, in the case of homicide, where useful to the trier of fact, expert medical testimony may be presented "concerning both the cause and the manner of a decedent's death." *People v Unger*, 278 Mich App 210, 251-253; 749 NW2d 272 (2008) (holding trial court did not abuse its discretion in permitting expert medical testimony to the effect "that victim had likely been pushed, shoved, or punched over the deck railing").

In this case, defendant is correct that, at trial, three forensic pathologists, Dr. Wilson, Dr. Ljubisa Jovan Dragovic (who was called as a defense witness), and Dr. Leigh Hlavaty all testified that AJ's body had numerous wounds consistent with a finding that someone else inflicted those wounds upon her, meaning that she had injuries which could be characterized as abusive injuries. Defendant also correctly indicates that a forensic dentist, Dr. Gary Berman, testified that AJ had a torn frenulum caused by "trauma," although we note that Dr. Berman expressly stated that he could not specify the type of trauma involved. Based on their findings of abusive type injuries, Dr. Wilson and Dr. Hlavaty opined that the cause of AJ's death was bilateral bronchial pneumonia associated with neglect and abusive injuries and that the manner of her death was homicide. None of the experts opined that defendant in particular inflicted the abuse in question or caused AJ's death.

Contrary to defendant's arguments on appeal, we see nothing even remotely improper in the expert testimony presented. This specialized medical testimony regarding the nature of AJ's injuries and their cause was highly useful to assisting the jury in determining whether AJ had been abused as well as in determining the cause and manner of her death. Consequently, the testimony was properly admitted pursuant to MRE 702. Indeed, in this homicide case, it was

entirely proper for qualified forensic pathologists to offer testimony relating to the cause and manner of AJ's death, including testimony related to her injuries and the means by which those injuries had been inflicted. Cf. *Unger*, 278 Mich App at 251-253. Moreover, the jury was in fact properly instructed that it did "not have to believe an expert's opinion," and defendant has not challenged either the qualifications of the experts or the reliability of their testimony. Instead, defendant's only challenge to this testimony is that it embraced an ultimate issue of fact for the jury. However, as noted, MRE 704 explicitly states that expert testimony regarding an ultimate issue, such as whether AJ had been subjected to physical abuse, is not objectionable merely because it embraces an ultimate issue. Defendant has proffered no additional reasons why the testimony of the expert witnesses should have been excluded, and therefore, defendant is unable to show any error, let alone plain error, in the admission of the experts' testimony.

In a related argument, defendant also maintains on appeal that defense counsel rendered ineffective assistance by failing to object to the expert testimony described above. In order to show ineffectiveness of counsel, a defendant must show that: (1) counsel's performance did not meet an objective standard of reasonableness under prevailing professional norms, and (2) there is a reasonable probability that, but for counsel's errors, the results of the proceedings would be different. *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012). Effective assistance of counsel is presumed and the defendant bears the heavy burden of proving otherwise. *People v Seals*, 285 Mich App 1, 17; 776 NW2d 314 (2009). "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

In this case, any objection by defense counsel to the expert testimony in question would clearly have been futile because such testimony was properly admitted under MRE 702 and was not objectionable merely because it embraced an ultimate issue. See MRE 704. Thus, defense counsel was not ineffective for failing to offer a futile objection on this basis. *Ericksen*, 288 Mich App at 201.

Affirmed.

/s/ Karen M. Fort Hood
/s/ Joel P. Hoekstra
/s/ Peter D. O'Connell

-3-