# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

SAMANTHA JO WILKERSON,

        Defendant-Appellant.

UNPUBLISHED
October 20, 2015

No. 321351
Crawford Circuit Court
LC No. 13-003624-FH

Before: MARKEY, P.J., and STEPHENS and RIORDAN, JJ.

PER CURIAM.

Defendant appeals by right from her conviction following a jury trial of abandoning/cruelty of two or three animals, MCL 750.50(4)(b).[1] She was sentenced to six months' probation. We affirm.

## I. BACKGROUND

On July 17, 2013, defendant left her house between 10:00 and 10:30 a.m. and returned at 1:30 p.m. During that time, her three dogs were outside. Estimates of the temperature on that day ranged from 90 degrees to in excess of 100 degrees. Shortly after returning home, defendant discovered one dog, Chevy, unresponsive. She attempted to no avail to revive him by pouring water on him and giving him CPR.

Animal Control Officer Gail Foguth testified that she and another officer responded to a complaint of a dead dog at the home. Foguth testified that she observed three food or water containers in the yard that appeared to be empty, as well as a five-gallon bucket containing dirty water. She also observed an igloo-type doghouse and a barrel-type doghouse in the yard. She testified that these doghouses tended to be hot inside and were more suitable for inclement, colder weather. She also observed two other dogs, Missy and Hemmie, running in the yard and

---

[1] Defendant was acquitted of one count of killing or torturing an animal, MCL 750.50b. This charge stemmed from the death of a dog named Chevy. The charge for which defendant stands convicted relates to the treatment of two other dogs, Missy and Hemmie.

-1-

panting quite heavily. Foguth testified that she asked defendant to put Missy and Hemmie in the house, but defendant refused, claiming the house was hotter than outside.

Dr. Troy Fairbanks performed a necropsy on Chevy. He testified that Chevy's temperature was above 109.7 degrees, "the upper limit" of the thermometer and that Chevy seemed to be "in decent shape," but that "the intestines, stomach, and colon were all empty of any food material or stool." He also testified that Chevy's internal organs felt tacky, which, he explained, can be an indication of dehydration. Dr. Fairbanks opined that Chevy died of heat stroke or heat exhaustion. Scott Fitzgerald, DVM, an expert in diagnostic pathology, concluded that the cause of death was hyperthermia or heat stroke.

One or two days after Chevy died, on another very hot day, defendant's neighbor observed Missy and Hemmie tied to a tree that was in full sun. On July 19, 2013, Foguth returned to the house with a search warrant and seized Missy and Hemmie because she felt they were not safe.

## II. ANALYSIS

Defendant argues that that insufficient evidence was presented at trial to support her conviction. A claim of insufficiency of the evidence is reviewed de novo. *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). "[W]hen determining whether sufficient evidence has been presented to sustain a conviction, a court must view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Wolfe,* 440 Mich 508, 515; 489 NW2d 748 (1992), amended on other grounds 441 Mich 1201 (1992). "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). Circumstantial evidence and reasonable inferences that arise from the evidence may constitute sufficient proof to support a conviction. *Ericksen*, 288 Mich App at 196.

MCL 750.50 reads in pertinent part as follows:[2]

(2) An owner, possessor, or person having the charge or custody of an animal shall not do any of the following:

(a) Fail to provide an animal with adequate care.

* * *

(f) Negligently allow any animal . . . to suffer unnecessary neglect, torture, or pain.

---

[2] The jury was instructed with respect to MCL 750.50(2)(a) and (f).

* * *

(4) A person who violates subsection (2) is guilty of a crime as follows:

(b) Except as otherwise provided in subdivisions (c) and (d), if the violation involved 2 or 3 animals or the death of any animal, the person is guilty of a misdemeanor . . . .

" 'Adequate care' means the provision of sufficient food, water, shelter, sanitary conditions, exercise, and veterinary medical attention in order to maintain an animal in a state of good health." MCL 750.50(1)(a). " 'Shelter' means adequate protection from the elements and weather conditions suitable for the age, species, and physical condition of the animal so as to maintain the animal in a state of good health." MCL 750.50(1)(j). " 'State of good health' means freedom from disease and illness, and in a condition of proper body weight and temperature for the age and species of the animal, unless the animal is undergoing appropriate treatment." MCL 750.50(1)(k). " 'Neglect' means to fail to sufficiently and properly care for an animal to the extent that the animal's health is jeopardized." MCL 750.50(1)(h). The jury was instructed consistent with MCL 750.50(2)(a) and (f), and were instructed regarding the above statutory definitions.

Defendant does not dispute that she owned, possessed, or had custody of Missy and Hemmie. She does dispute whether the evidence established that she failed to provide the dogs with adequate care or negligently allowed them to suffer unnecessary neglect.

Missy and Hemmie were found by Foguth "panting heavily" on a day when the temperature outside was between 90 and over 100 degrees. Foguth acknowledged that there were two doghouses available to the animals, but believed these doghouses were not suitable to protect them from extreme heat. Indeed, Foguth testified that these types of dog houses tended to be hot inside. Furthermore, defendant refused to allow the animals in her home as Foguth suggested. This evidence, paired with the fact that Chevy perished under identical circumstances on July 17 was sufficient for a rational jury to conclude beyond a reasonable doubt that the defendant did not provide the animals with sufficient shelter.

Additionally, evidenced was adduced that the animals were not provided with sufficient water. MCL 750.50(2) provides that a pet must be provided with adequate care, which includes providing "sufficient . . . water . . . in order to maintain an animal in a state of good health," MCL 750.50(1)(a). Although both defendant and Mark Mikulin, Jr., her boyfriend, testified that they left water for the dogs on July 17, Foguth did not observe any water in the yard, aside from dirty water in a five-gallon bucket. Defendant testified that she had "grabbed every single thing of water that was out there . . . [t]here was three . . . and poured them on" Chevy, which could account for the lack of water observed by Foguth. The fact, however, that Chevy was in the condition he was constituted circumstantial evidence that there was not sufficient water for the dogs.

Defendant testified that she left several bowls of water and food outside for Missy and Hemmie on July 19, and Mikulin testified that he had put six or seven bowls of water in the yard that day. Foguth testified that on July 19 she saw two water dishes near Hemmie, who was

-3-

tangled in a line attached to a tree, but they had been tipped. There was some water "in the crease" of one of the bowls. This evidence is sufficient to conclude the dogs were not provided adequate water on July 19, particularly given that Chevy had died two days earlier from what Dr. Fairbanks opined was heat stroke or heat, a diagnosis echoed by Dr. Fitzgerald.

Furthermore, this circumstantial evidence also supports a theory of negligently allowing animals to suffer neglect. Considering that one animal had already died under these same conditions, it would be reasonable for a jury to conclude that the health of the remaining two animals was in jeopardy.

We affirm.

/s/ Jane E. Markey
/s/ Cynthia Diane Stephens
/s/ Michael J. Riordan