# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JOHNNY MILLER,

Defendant-Appellant.

UNPUBLISHED
February 23, 2017

No. 329317
Genesee Circuit Court
LC No. 14-035100-FC

Before: GLEICHER, P.J., and MURRAY and FORT HOOD, JJ.

PER CURIAM.

A jury acquitted defendant of one count of open murder, MCL 750.316, and two counts of assault with intent to commit murder (AWIM), MCL 750.83, but convicted him of one count of felon in possession of a firearm, MCL 750.224f (felon-in-possession), and possession of a firearm during the commission of a felony, MCL 750.227b (felony-firearm).[1] The trial court sentenced defendant, as a fourth-offense habitual offender, MCL 769.12, to 10 to 25 years' imprisonment for the felon-in-possession conviction, and a consecutive two-year term of imprisonment for the felony-firearm conviction. Defendant appeals as of right. We affirm.

Defendant's convictions arise from his possession of a firearm during the early evening hours of March 27, 2014. The prosecution presented evidence that Irontae White was driving down a street in Flint with his girlfriend, Laquita Smith, when they saw defendant. Their one-year-old son, Jakari, was sitting in his car seat in the backseat. White stopped the car, got out, and walked to the rear of his vehicle to approach defendant. As White and defendant were talking, Smith watched them through the rearview mirror. According to Smith, defendant shot White by firing a gun through his coat pocket. Defendant then pulled the gun out of his pocket and pointed it at the rear window of the car. Smith quickly moved from the passenger's seat to the driver's seat and was able to drive herself and Jakari away safely. As she drove off, Smith saw defendant pull the trigger, but the gun did not fire. Smith believed that defendant was trying to kill both her and Jakari. Defendant testified that, fearing for his life, he shot White in self-defense. At sentencing, the trial court departed upward from the sentencing guidelines'

---

[1] The one count of open murder pertained to the shooting death of Irontae White, and the AWIM convictions pertained to White's girlfriend, Laquita Smith, and their toddler son, Jakari Smith.

-1-

minimum sentence range of 24 to 76 months for the felon-in-possession conviction, and imposed a sentence of 10 to 25 years' imprisonment. On appeal, defendant raises issues related to his felon-in-possession sentence and asserts that he was denied the effective assistance of counsel at sentencing.

We first address defendant's challenge to the trial court's scoring of offense variable (OV) 19, which concerns a defendant's interference with the administration of justice. Defendant argues that the trial court erred in assessing a score of 10 points for OV 19. We disagree.

When reviewing a trial court's scoring decision, the trial court's "factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013) (footnote and citations omitted). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id.* (Footnote and citation omitted.)

The trial court must score 10 points if "[t]he offender otherwise interfered with or attempted to interfere with the administration of justice[.]" MCL 777.49(c). In scoring OV 19, a court may consider the defendant's conduct after the completion of the sentencing offense. *People v Smith*, 488 Mich 193, 200; 793 NW2d 666 (2010). A defendant interferes with the administration of justice by "oppos[ing] so as to hamper, hinder, or obstruct the act or process of administering judgment of individuals or causes by judicial process." *People v Hershey*, 303 Mich App 330, 343; 844 NW2d 127 (2013) (footnote and citation omitted). In *People v Ericksen*, 288 Mich App 192, 204; 793 NW2d 120 (2010), this Court held that a 10-point score for OV 19 was appropriate where "there was evidence that [the] defendant asked one of his companions to dispose of the knife he used to stab the victim and asked others to lie about his whereabouts during the night of the crime."

In this case, the trial court heard evidence that after shooting White, defendant fled the crime scene, dissembled the weapon, and buried it where it remained until defendant decided to reveal its location days before trial. Defendant argues that he did not interfere with the administration of justice because he eventually revealed the location of the gun. However, given that defendant fled the scene and hid evidence of the charged crimes, a preponderance of the evidence supported the trial court's conclusion that he interfered with the administration of justice. Indeed, OV 19 "is generally scored for conduct that constitutes an attempt to avoid being caught and held accountable for the sentencing offense." *People v Sours*, 315 Mich App 346, 349; ___ NW2d ___ (2016) (footnote omitted). The fact that defendant later revealed the location of the gun does not detract from the fact that he initially hid it in an effort to thwart law enforcement's investigation. Accordingly, the trial court did not err in concluding that defendant's conduct warranted the 10-point score for OV 19.

Defendant's challenge involving OV 12[2] focuses on his contention that the trial court ought not have assessed 25 points for OV 12 where the jury acquitted defendant of one count of open murder and the two counts of AWIM. Accordingly, as best we can discern, defendant is asserting that the trial court engaged in constitutionally impermissible judicial fact-finding to score OV 12, contrary to the Michigan Supreme Court's ruling in *People v Lockridge*, 498 Mich 358, 364; 870 NW2d 502 (2015). Because this issue involves defendant's Sixth Amendment rights, we review this constitutional issue de novo. *Id.* at 373.

In *Lockridge*, *id*. at 364, our Supreme Court held that Michigan's sentencing guidelines are constitutionally deficient, in violation of the Sixth Amendment, to the extent that they "*require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range[ ]. . . [.]" To remedy this deficiency, the Court held that the sentencing guidelines are advisory only. *Id.* at 391. This Court, post-*Lockridge*, has recognized that "judicial fact-finding is proper, as long as the [sentencing] guidelines are advisory only." *People v Biddles*, ___ Mich App ___, ___; ___ NW2d ___ (2016) (Docket No. 326140); slip op at 6 (footnote omitted). In *Biddles*, this Court went on to state the following with respect to judicial fact-finding:

> The constitutional evil addressed by the *Lockridge* Court was not judicial fact-finding in and of itself, it was judicial fact-finding in conjunction with *required* application of those found facts for purposes of increasing a *mandatory* minimum sentence range, which constitutional violation was remedied in *Lockridge* by making the guidelines advisory, not by eliminating judicial fact-finding. [*Id.*; slip op at 5.]

The *Biddles* Court's reasoning echoed a previous panel's articulation of the law post-*Lockridge* in *People v Stokes*, 312 Mich App 181, 196; 877 NW2d 752 (2015). In *Stokes*, this Court clearly recognized that the sentencing guidelines "must still be scored," and that judicial fact-finding will remain an instrumental part of this process:

> As explained by our Supreme Court, "[b]ecause sentencing courts will hereafter not be bound by the applicable sentencing guidelines range, this remedy cures the Sixth Amendment flaw in our guidelines scheme by removing the unconstitutional constraint on the court's discretion." [*Id.*, quoting *Lockridge*, 498 Mich at 392.]

Notably, defendant was sentenced after *Lockridge* was decided and the trial court was well aware of the Michigan Supreme Court's decision in *Lockridge*, and that the sentencing

---

[2] MCL 777.42(a) allows the trial court to assess 25 points where "[t]hree or more contemporaneous felonious criminal acts involving crimes against a person were committed." Defendant's challenge to the trial court's scoring of OV 12 focuses on a constitutional challenge to the trial court's judicial fact-finding, as opposed to the adequacy of the evidence supporting the scoring of OV 12.

guidelines were advisory. Put simply, where judicial fact-finding in and of itself is not prohibited by the Sixth Amendment and does not run afoul of *Lockridge*, the trial court's reliance on judicially found facts, established by a preponderance of the evidence, to assess a 25 point score for OV 12 was constitutionally permissible.

Defendant also claims that the trial court erred in departing upward from the minimum sentence guidelines range. We disagree.

As noted, the trial court departed from the guidelines range, sentencing defendant to 10 to 25 years' imprisonment for his conviction of felon-in-possession of a firearm.[3] In *Lockridge*, 498 Mich at 392, the Michigan Supreme Court recognized that a court may exercise its discretion to depart from the applicable guidelines range and further, that "[a] sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." (Citation omitted.) In *People v Steanhouse*, 313 Mich App 1, 46-47; 880 NW2d 297 (2015), this Court adopted the "principle of proportionality" standard from *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990), as the appropriate standard for determining the reasonableness of a sentence under *Lockridge*. Specifically, the *Steanhouse* Court held that a proportionate sentence would meet the threshold of reasonableness as set forth in *Lockridge*. *Steanhouse*, 313 Mich App at 47-48. Under this standard, the trial court is required to impose a sentence that is "'proportionate to the seriousness of the circumstances surrounding the offense and the offender.'" *Steanhouse*, 313 Mich App at 45, quoting *Milbourn*, 435 Mich at 636. In *Steanhouse*, this Court referred to *Milbourn* and *People v Houston*, 448 Mich 312, 321, 323; 532 NW2d 508 (1995), articulating a non-exclusive list of factors that Michigan courts had previously weighed in meeting the proportionality standard, such as:

> (1) the seriousness of the offense, (2) factors that were inadequately considered by the guidelines, and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*Steanhouse*, 313 Mich App at 46 (citations omitted).]

Both at the sentencing hearing and the hearing on defendant's motion for resentencing, the trial court provided a lengthy and detailed explanation setting forth the reasons for its upward departure from the minimum sentence guidelines range, and why its ultimate sentence was proportionate. When sentencing defendant, the trial court considered defendant's extensive and violent criminal background starting when he was a juvenile, stating, "you [defendant] have an impulsiveness that is dangerous for the rest of society. And we have to restrain that."[4] The trial court also cited defendant's "disrespect for the gun laws[,]" and defendant's multiple "acts of violence" while incarcerated. The trial court also noted that defendant was housed in solitary confinement for misconduct while incarcerated at the time of sentencing. The trial court also

---

[3] The trial court exceeded the recommended guidelines range by 44 months.

[4] The presentence investigation report (PSIR) confirms that defendant had a prior conviction for involuntary manslaughter in the year 2000.

considered the presentence investigation report (PSIR), which stated that during the presentence investigative interview, "defendant was uncooperative and demonstrated no remorse for human life [sic]." At the subsequent hearing on defendant's motion for resentencing, the trial court also observed that defendant's sentence was proportionate because of (1) his violent criminal history and prison misconduct record, and (2) the violence that took place when White was shot and killed and attempts were made to shoot Smith and Jakari.

On appeal, defendant briefly contends that the trial court's consideration of any facts related to the scoring of OV 12 to justify its upward departure was inappropriate, given that OV 12 already took into account the existence of three contemporaneous felonies. As this Court has recognized, a trial court may rely on factors given inadequate or disproportionate weight by the sentencing guidelines in departing from the recommended guidelines range. *People v Lowery*, 258 Mich App 167, 170; 673 NW2d 107 (2003). While OV 12 does take into consideration the existence of three other felonies that took place contemporaneously with the sentencing offense, the trial court's stated reasons for its departure were focused more on the violence of the offenses, defendant's impulsive and reckless behavior, his inability to conform his behavior to comply with the law, and his callous indifference to the safety of other human lives. Such factors are not embodied in OV 12. See, e.g., *People v Horn*, 279 Mich App 31, 44-45; 755 NW2d 212 (2008) (recognizing that a defendant's recidivism and inability to rehabilitate may justify an upward departure from the sentencing guidelines range). Additionally, the trial court complied with *Lockridge*, in that it took great care to note the justifications supporting its departure from the recommended sentencing guidelines range. *Lockridge*, 498 Mich at 392. In sum, we are of the view that the trial court's stated reasoning for imposing defendant's upward departure sentence met the threshold of proportionality pursuant to *Milbourn*, and was therefore a reasonable sentence as contemplated by *Lockridge*.[5] *Steanhouse*, 313 Mich App at 47-48.

Defendant also argues that trial counsel's assistance at sentencing was constitutionally infirm. We disagree.

In *People v Solloway*, ___ Mich App ___, ___; ___ NW2d ___ (2016) (Docket No. 324559); slip op at 7, this Court set forth the governing legal principles for reviewing a defendant's claim that he was denied the effective assistance of counsel where the defendant's request for a *Ginther*[6] hearing was denied:[7]

---

[5] Given our conclusion that remand for resentencing is not warranted, we decline to address further defendant's allegation of judicial bias. However, we take this opportunity to note that our close review of the record did not yield any indication of bias against defendant on the part of the trial court.

[6] *People v Ginther*, 390 Mich 436, 442-443; 212 NW2d 922 (1973).

[7] The trial court denied defendant's motion seeking an evidentiary hearing, and this Court denied defendant's motion for remand for an evidentiary hearing. *People v Miller*, unpublished order of the Court of Appeals, entered May 25, 2016 (Docket No. 329317).

Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law. Generally, a trial court's findings of fact, if any, are reviewed for clear error, and questions of law are reviewed de novo. *Id*. However, because defendant's motion for a new trial and request for a *Ginther* hearing were denied, no factual record was created with respect to defendant's claim, and this Court's review is limited to mistakes apparent on the lower court record. [Footnotes and citations omitted.]

"To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013) (citation omitted). "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Id*. (Citation omitted.)

Our review of the record confirms that trial counsel reviewed the PSIR, objected to erroneous information within the report, and aggressively argued against an upward departure sentence. Defendant argues, however, that counsel was ineffective for failing to file a written response to the prosecution's sentencing memorandum. As the trial court observed, a defense attorney is not obligated to file a written responsive sentencing memorandum. Moreover, MCR 6.425(E)(1)(c) expressly affords a defense attorney the opportunity at sentencing to advise the trial court of any circumstances counsel believes should be considered at sentencing, and in this case trial counsel addressed each of the prosecution's arguments orally at sentencing. Put another way, it was not objectively unreasonable for trial counsel to rely on his right of allocution at sentencing to respond to the prosecutor's sentencing memorandum. The record also fails to support defendant's claim that trial counsel was ineffective for failing to obtain defendant's prison records or that trial counsel misunderstood defendant's criminal history. Defendant points out that his prior prison sentence for involuntary manslaughter was imposed when he was a 15-year-old juvenile, and that most of his misconduct citations were incurred "during the first half of his incarceration and were fewer than 26." However, trial counsel clearly understood and emphasized to the trial court that defendant's prior conviction for manslaughter occurred when defendant was only 15 years old and involved defendant driving a vehicle. After the prosecutor brought up an inconsistency in the PSIR regarding whether defendant had 29 or 26 prison misconduct citations, the record reflects that trial counsel personally consulted with defendant and verified that defendant had incurred 26 misconduct citations. Further, the trial court stated that if it only considered 6 of the 26 misconduct citations, those alone would have provided the trial court with enough support for its decision to depart upward from the sentencing guidelines range. Therefore, defendant's claim that trial counsel's performance was in any manner objectively unreasonable according to prevailing professional norms is not supported by the record and is without merit. *Nix*, 301 Mich App at 207.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Christopher M. Murray
/s/ Karen M. Fort Hood