*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

STEVE BENEDICT ALADICS II,

        Defendant-Appellant.

UNPUBLISHED
December 21, 2023

No. 364308
Barry Circuit Court
LC No. 2022-000251-FH

Before: RIORDAN, P.J., and MURRAY and M. J. KELLY, JJ.

PER CURIAM.

Defendant, Steve Benedict Aladics II, was convicted after a jury trial of aggravated stalking, MCL 750.411i. The trial court sentenced Aladics as a fourth-offense habitual offender, MCL 769.12, to 120 to 480 months' imprisonment. For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

Aladics and the complainant met in 2012, when the victim was 15 years of age and Aladics was 23. During their 10-year relationship, they married and had two children. The complainant testified that during the relationship, Aladics was mentally, physically, and emotionally abusive. She recounted that, among other things, he had thrown her into a wall, had shoved her to the ground, and had told her that she was not good enough and that she was a bad mother. She testified that she tried to leave him several times, but he threatened to harm her parents and take her children from her so she stayed with him. In December 2020, however, their daughter disclosed that Aladics had sexually assaulted her. Thereafter, the complainant applied for a personal protection order (PPO). The PPO, which was granted in December 2020, prohibited Aladics from contacting the complainant. Additionally, criminal proceedings were initiated against Aladics based upon the

-1-

allegations that he had sexually assaulted his daughter.[1]  As part of the criminal proceedings, a no-contact order was put in place that prohibited him from contacting the complainant or his daughter.

Aladics ignored the PPO and contacted the complainant on three occasions.  First, in January 2021, Aladics, who was incarcerated at the time, asked his cellmate to place a three-way call so that Aladics could speak to the complainant.  The complainant recognized Aladics's voice when she answered the phone.  Her daughter also recognized Aladics's voice.  The complainant testified that the call made her feel harassed, intimidated, and scared.  She recounted that both she and her daughter were terrified by hearing Aladics's voice.  Aladics told her that he loved her and "not to hang up."  She told Aladics "to not call me again, please never contact me."  The complainant then reported Aladics's phone call to the police.  The investigating detective who took the report testified that the complainant was very upset, her voice was shaking, and she felt harassed because the PPO and the no-contact order were not protecting her.  Additionally, Aladics's cellmate's girlfriend, who facilitated the call, testified that the complainant called her phone to learn why she had placed the call for Aladics.  She stated that during the call the complainant was "very upset," her voice was shaking, and it was clear that she did not want to have contact with Aladics.

The second incident occurred in May 2021.  The complainant testified that Aladics called her twice.  The first call was "a prerecording with [Aladics's] voice on it."  She did not answer the second call.  The complainant again reported the contact to the police.  The investigating detective stated that the complainant was again upset and feeling harassed because her PPO and no-contact order were not protecting her.  The complainant also contacted the Department of Corrections to have her phone number blocked from the prison so that Aladics could no longer contact her.

The third incident occurred in November 2021.  The complainant stated that when she heard Aladics's voice she immediately told him not to contact or call her again.  The complainant testified that Aladics's repeated contact caused her to lose sleep and forced her to engage in safety planning.  She sought counseling and felt like she had to watch over her shoulder wherever she went.  She added that she felt that she would always need a PPO "[b]ecause he's never gonna stop" and that he had told her that "he's never gonna stop."  At trial, a police detective testified that she was concerned about Aladics's repeated contact of the complainant because he continued to repeatedly contact her after being told to stop.

The jury found Aladics guilty of aggravated stalking.  During sentencing, the complainant provided a victim-impact statement that detailed the trauma and fear that she experienced as a result of Aladics repeatedly violating the PPO.  Aladics also made a statement at sentencing, explaining that "if I knew this was gonna come to this and it was gonna cause me problems, I wouldn't of [sic] made the phone call."  He added that because the PPO stated that any violation would result in a misdemeanor, punishable by up to 93 days, he was unaware of the fact that he

---

[1] Aladics eventually pleaded no contest to the charges related to his sexual assault of his daughter, and he was divorced from the complainant.

could be convicted of aggravated stalking. For reasons that will be discussed further below, the trial court imposed an outside-the-guideline sentence of 120 to 480 months.

## II. SUFFICIENCY OF EVIDENCE

### A. STANDARD OF REVIEW

Aladics argues that the prosecution did not present sufficient evidence at trial to sustain his aggravated stalking conviction. Challenges to the sufficiency of the evidence are reviewed de novo. *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). The evidence is viewed in a light most favorable to the prosecution and conflicts in the evidence are resolved in favor of the prosecution. *People v Solloway*, 316 Mich App 174, 180-181; 891 NW2d 255 (2016). Because the standard of review is deferential, "a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). The reviewing court must determine "whether the evidence was sufficient to justify a rational trier of fact's conclusion that the evidence proved the essential elements of the crime beyond a reasonable doubt." *Solloway*, 316 Mich App at 181.

### B. ANALYSIS

Aladics was convicted of aggravated stalking. "Stalking" is statutorily defined as "a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested." MCL 750.411i(2)(e). As relevant in this case, an individual is guilty of aggravated stalking if the stalking involves at least one action "in violation of a restraining order" when "the individual has received actual notice of that restraining order." MCL 750.411i(2)(a).

Aladics argues that there is insufficient evidence to establish that his violations of the PPO caused the complainant to feel terrorized, frightened, intimidated, threatened, harassed, or molested. He suggests instead that the complainant was only angry about the phone calls and that she had no reason to feel, terrorized, frightened, intimidated, threatened, harassed, or molested by the phone calls because he was imprisoned at the time, posed no physical threat to her, and, therefore, was incapable of terrorizing her. We disagree.

The complainant testified that her relationship with Aladics was marked by physical, verbal, and emotional abuse, which included his threats to harm her and others and to take her children away from her. It was only after Aladics sexually assaulted their daughter that she was able to gather the courage to leave him. In light of their history, it is reasonable to infer that his contact, in violation of the PPO and the no-contact order, would make a reasonable person feel terrorized, frightened, intimidated, threatened, harassed, or molested. Moreover, the complainant testified that she could not sleep as a result of the contact, that she felt as if she had to look over her shoulder, and that she engaged in safety planning. She was intimidated by the calls because she knew how badly Aladics could hurt her and it did not seem that the PPO was able to protect her from unwanted contact even when Aladics was incarcerated. Additionally, Aladics's cellmate's girlfriend recounted that the complainant was very upset and her voice was shaking when she called her to determine why she had facilitated Aladics contacting her. The police

detective who investigated Aladics's violation of the PPO likewise described the complainant as angry, afraid, and harassed because she had the PPO and the no-contact order because she did not want contact with Aladics, who was contacting her notwithstanding the legal orders prohibiting the contact. Viewing this evidence in the light most favorable to the prosecution, we conclude that there is sufficient evidence to establish that Aladics's repeated violations of the PPO and no-contact order caused the complainant to feel terrorized, frightened, intimidated, threatened, harassed, or molested. Moreover, given their history and the repeated nature of the contacts, we conclude that a reasonable person would feel terrorized, frightened, intimidated, threatened, harassed, or molested by the contact.

In sum, we conclude that sufficient evidence was presented to sustain Aladics's aggravated-stalking conviction. Accordingly, his conviction is affirmed.

## III. SENTENCING

### A. STANDARD OF REVIEW

Aladics argues that the trial court erred by imposing an outside-the-guidelines sentence of 120 months. A trial court's outside-the-guideline sentence is reviewed for reasonableness. *People v Lockridge*, 498 Mich 358, 365; 870 NW2d 502 (2015). "[A]ppellate review of departure sentences for reasonableness requires review of whether the trial court abused its discretion by violating the principle of proportionality set forth in" *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990). *People v Steanhouse*, 500 Mich 453, 477; 902 NW2d 327 (2017).

### B. ANALYSIS

To determine whether a sentence outside the guidelines range is more proportionate than a sentence within the guidelines, the court may consider "(1) whether the guidelines accurately reflect the seriousness of the crime; (2) factors not considered by the guidelines; and (3) factors considered by the guidelines but given inadequate weight." *People v Dixon-Bey*, 321 Mich App 490, 524-525; 909 NW2d 458 (2017) (quotation marks and citations omitted). Additionally, when considering the proportionality of a sentence, the trial court should consider: "(a) the reformation of the offender, (b) protection of society, (c) the disciplining of the wrongdoer, and (d) the deterrence of others from committing like offenses." *People v Bennett*, 335 Mich App 409, 418; 966 NW2d 768 (2021) (quotation marks and citation omitted).

In this case, the court noted that the guidelines did not accurately reflect the seriousness of the crime because Aladics had 10 prior felonies, 10 misdemeanors, and was currently serving a sentence for criminal sexual conduct. The trial court also listed the factors not considered by the guidelines, including protection of the overall community and protection of the complainant and her children. The court noted that the complainant would always have to look over her shoulder and that her life would never be the same. Additionally, the trial court discussed "factors considered by the guidelines but given inadequate weight," such as the fact that Aladics was given multiple opportunities to deter himself from crime "with counseling, with probation, with other sources that are available, you—he's been in jail, has every deterrent possible, it doesn't work, hasn't worked. And in fact, his criminal history over the last few years has accelerated, it's gotten worse." The trial court noted Aladics's Prior Record Variable (PRV) score was 95 points, but that

the PRV level only accounted for 75 points. On this record, the trial court did not err by determining that a sentence outside the guidelines was more proportionate than a sentence within the guidelines.

Aladics next argues that because he appreciated the seriousness of his actions and was remorseful at sentencing, the departure sentence is disproportionate and inappropriate. However, during sentencing, Aladics admitted that he knowingly disregarded the court's orders and contacted the complainant because he assumed that the only consequence he would face was a misdemeanor, punishable by up to 93 days. He stated:

> I made the calls. I didn't dispute that. I didn't say I didn't. I didn't deny it or anything like that. I knew what I was doin', I just didn't know what I was actually setting myself up for.

> *  *  *

> [I]f I knew it was gonna come to this, I wouldn't've [sic] made the call. And the PPO had stated, you know, if I did violate that it was a 93 day offense for a misdemeanor.

Even at sentencing, therefore, it is plain that Aladics did not appreciate the effect that his actions had on the complainant. At his sentencing hearing, he continued to believe his actions to be harmless enough to amount to a misdemeanor, and he repeatedly stated that if he knew "this was gonna come to this and it was gonna cause me problems," then he would have never contacted the complainant, and that "[i]f 93 days was the cost of me being able to tell my now ex-wife . . . that I love her," then he was okay with violating court orders. Aladics's lack of understanding of the severity of his actions is a factor that can be considered as a sentencing factor, and the record shows that Aladics is likely to repeat his actions so long as he does not believe he will face serious consequences.

Lastly, Aladics argues that a 120-month minimum sentence "for a phone call to let someone know they still loved them is patently unreasonable." Yet, the trial court did not impose the departure sentence only "for a phone call to let someone know they still loved them." The trial court imposed the departure sentence because Aladics violated the court's orders multiple times, showed no success in rehabilitation despite multiple attempts, and has been terrorizing the complainant and her children.

In sum, the trial court's sentence was based on both factors that were not given adequate weight by the guidelines and factors not considered by the guidelines; it was also imposed with concern for the complainant and to adequately discipline Aladics. See *Dixon-Bey*, 321 Mich App

at 525. Therefore, the trial court's sentence did not violate the principle of proportionality, and Aladics is not entitled to resentencing.

Affirmed.

/s/ Michael J. Riordan
/s/ Christopher M. Murray
/s/ Michael J. Kelly