*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
December 10, 2020

Plaintiff-Appellee,

v

No. 350551
Monroe Circuit Court

DANIEL ALLAN CLAY,

LC No. 16-243168-FC

Defendant-Appellant.

Before: LETICA, P.J., and RIORDAN and CAMERON, JJ.

PER CURIAM.

Defendant was convicted by a jury of first-degree criminal sexual conduct (CSC-I) (multiple variables), MCL 750.520b. Defendant was initially sentenced, as a second-offense habitual offender, MCL 769.10, to 40 to 75 years' imprisonment. *People v Clay*, unpublished per curiam opinion of the Court of Appeals, issued February 26, 2019 (Docket No. 339916), p 1. On appeal, we affirmed his conviction, but remanded for resentencing. *Id*. at 6-8. The trial court resentenced defendant to 39 to 60 years' imprisonment. We affirm.

## I. BACKGROUND

This case arises from defendant's sexual assault of the victim on June 9, 2016. On the day of the sexual assault, the victim's friend Wesley arrived at the victim's apartment with his friends, Klare and defendant. The victim had seen defendant on Facebook but did not know him personally. As we summarized in our previous opinion, the following transpired:

> The four of them consumed one fifth of vodka and began drinking from a second bottle. It was after the second bottle was opened that defendant told [the victim] that he had some Neurontin pills and she traded him another shot for a pill. Defendant offered her another Neurontin pill, but before taking it, [the victim] told the defendant that she was not going to have sex with him as a form of payment for the pill. Defendant told her that she could just have the pill, so she took it but felt no differently afterward. After about an hour and a half, [the victim] told everyone they had to leave because they were being too loud. It was after everyone left that [the victim] noticed her cigarettes and the other bottle of vodka were gone. She

texted Wesley and told him to return the items and he responded that he had not taken them.

Sometime later, [the victim] was sitting on the couch on Facebook when defendant unexpectedly walked through the front door. She asked him if he had her liquor and cigarettes. Defendant did not respond. Instead he walked up to the couch and struck [the victim] on the left side of her head throwing her to the ground by her hair. As he held her down, he vaginally penetrated her and bit her breasts. Defendant then dragged her to the bathroom by her hair and threw her into the shower, hitting her head on the spigot. After turning on the shower, defendant ejaculated on [the victim] in the tub and left. [The victim] waited three minutes before turning off the water and getting out of the tub. She retrieved her phone from the couch and called 9-1-1. The police arrived and she was transported to the hospital by ambulance.

After a jury trial, defendant was convicted of one count of CSC-I. During the sentencing hearing, the trial court assessed 50 points for offense variable (OV) 7, 15 points for OV 10, and 25 points for OV 13. The minimum sentencing guidelines range was 18 years and 9 months to 39 years in prison. The trial court sentenced defendant above the minimum sentencing guidelines range to 40 to 75 years' imprisonment.

In his first appeal, defendant argued that the trial court erred when it imposed an upward departure sentence because it failed to articulate its reasons for the departure on the record, and the sentence was disproportionate and unreasonable. *Id.* at 6-7. We took issue with the trial court's apparent reliance on defendant's lying to law enforcement as a reason for the upward departure because it appeared to penalize defendant for failing to admit guilt. *Id.* at 7-8. We affirmed defendant's conviction, but remanded for the trial court to articulate its reasons for the upward departure. *Id.*

On remand, the trial court clarified that it did not rely on defendant's lying to law enforcement to impose an upward departure sentence. Rather, it relied on the brutal nature of the offense, defendant's status as a serial rapist, defendant's history of violating every term of community supervision, and defendant's accumulation of eight misconduct tickets after he was incarcerated. However, the trial court resentenced defendant within the minimum sentencing guidelines range to 39 to 60 years' imprisonment.

The instant appeal followed.

## II. OFFENSE VARIABLES

Defendant now argues that the trial court erred in scoring OVs 7, 10, and 13, and thus, he is entitled to another resentencing. We disagree.

## A. ISSUE PRESERVATION

Although defense counsel objected to the scoring of these OVs during defendant's initial sentencing, in defendant's first appeal, defendant only challenged the sentencing court's decision to score OV 8. And, at resentencing, defense counsel failed to object to the scoring of the OVs.

However, appellate counsel filed a motion for remand with this Court to object, or, in the alternative, to raise defense counsel's failure to object at resentencing as an ineffective-assistance-of-counsel claim.[1] Therefore, defendant's challenges are preserved. MCR 769.34(10).

## B. STANDARD OF REVIEW

"A trial court's findings of fact at sentencing must be supported by a preponderance of the evidence; this Court reviews a trial court's findings of fact for clear error." *People v Maben*, 313 Mich App 545, 549; 884 NW2d 314 (2015). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Anderson*, 284 Mich App 11, 13; 772 NW2d 792 (2009) (quotation marks omitted). "This Court reviews de novo whether the facts are adequate to satisfy the statutory criteria for scoring the variable." *Maben*, 313 Mich App at 549.

When calculating the sentencing guidelines, a sentencing court may consider all record evidence before it, including the contents of a presentence investigation report, plea admissions, and testimony presented at a preliminary examination or trial. *People v Johnson*, 298 Mich App 128, 131; 826 NW2d 170 (2012). "[T]he trial court may rely on inferences that arise from the record evidence when making the findings underlying its scoring of offense variables." *People v McFarlane*, 325 Mich App 507, 532; 926 NW2d 339 (2018). "Offense variables are properly scored by reference only to the sentencing offense except when the language of a particular offense variable statute specifically provides otherwise." *People v McGraw*, 484 Mich 120, 135; 771 NW2d 655 (2009).

## C. OV 7

Defendant argues that the trial court erred in assessing 50 points for OV 7 because it relied on conduct that occurred after the sentencing offense. We disagree.

OV 7 addresses aggravated physical abuse. MCL 777.37(1). A court must score 50 points for OV 7 if "[a] victim was treated with sadism, torture, excessive brutality, or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." MCL 777.37(1)(a). "[T]he 'similarly egregious conduct' clause is a discrete alternative to conduct that does constitute sadism, torture, or excessive brutality." *People v Walker*, 330 Mich App 378, 389; 948 NW2d 122 (2019). "In other words, if a defendant treated a victim with excessive brutality, 50 points should be scored under OV 7 even if the defendant did not intend to substantially increase the victim's fear and anxiety." *Id*. Thus, there are four distinct categories of conduct on which a court can rely to assess 50 points for OV 7. The only other possible score for OV 7 is zero points. MCL 777.37(1)(b).

"[C]ourts may consider conduct inherent in a crime when scoring offense variables." *People v Hardy*, 494 Mich 430, 442; 835 NW2d 340 (2013). "Because of the language 'during the offense' used in MCL 777.37(1)(a), the focus of OV 7 is solely on conduct occurring during

---

[1] We denied defendant's motion for remand. *People v Clay*, unpublished order of the Court of Appeals, entered March 6, 2020 (Docket No. 350551).

the sentencing offense." *People v Rodriguez*, 327 Mich App 573, 578; 935 NW2d 51 (2019) (quotation marks and alterations omitted).

During the initial sentencing hearing, the trial court made the following findings regarding OV 7:

> The testimony showed that [the victim] was punched. She was dragged by her hair to the bathroom, thrown in the shower, masturbated on. Clearly this is sadistic and brutal conduct designed to substantially increase fear and anxiety. This is . . . conduct beyond the minimum conduct required to commit the offense [the defendant is] being charged with. It was degrading. It was humiliating and it was intended to increase fear and did that.

Thus, the court found that defendant acted with "sadism," "excessively brutality" and conduct designed to substantially increase fear and anxiety. "Sadism is statutorily defined as conduct that subjects a victim to extreme or prolonged pain or humiliation and is inflicted to produce suffering or for the offender's gratification." *Rodriguez*, 327 Mich App at 578 n 2 (quotation marks omitted). "Excessive brutality" is defined as "savagery or cruelty beyond even the 'usual' brutality of a crime." *Id*. In *Hardy*, our Supreme Court addressed what is necessary to establish that a defendant engaged in conduct to "substantially increase the fear and anxiety a victim suffered during the offense." *Hardy*, 494 Mich at 439-444. "The relevant inquiries are (1) whether the defendant engaged in conduct beyond the minimum required to commit the offense; and, if so, (2) whether the conduct was intended to make a victim's fear or anxiety greater by a considerable amount." *Id*. at 443-444.

On appeal, defendant primarily argues that the trial court erred when it considered conduct after the completion of the sentencing offense to assess 50 points. Specifically, defendant contends that only conduct that occurred during the sentencing offense could be considered to score OV 7, and the sentencing offense only involved "[defendant] inserting his penis into [the victim's] genital opening," in the living room. Thus, defendant argues that the court incorrectly relied on defendant's conduct during a separate incident that occurred after the sentencing offense— dragging the victim by the hair to the bathroom, throwing her in the shower, and ejaculating on her. Defendant also argues that his conduct during the sentencing offense—during the time he actually penetrated the victim—did not amount to "excessive brutality."

We first consider defendant's argument that his conduct during the actual time of penetration did not amount to excessive brutality. The evidence demonstrated that defendant walked into the victim's apartment, struck her in the head, and grabbed the hair on the back of her head, using it to drag her onto the floor. The victim testified that she was instantly scared after defendant hit her and she did not know what to do. Defendant got on top of the victim, held her arms above her head with one hand, and tore off her clothes as well with his other hand. Once defendant penetrated the victim's vagina, defendant placed his forearm across the victim's throat and forcefully pressed down on it, causing her pain. As the victim continued to scream "[n]o," defendant took her head and slammed it into the floor. Defendant also bit the victim on her breast and her neck.

The sentencing offense at issue was the crime of CSC-I. Defendant was charged with CSC-I under multiple variables. The jury was instructed that, in order to convict defendant of the crime of CSC-I under MCL 750.520b(1)(c), which required that defendant sexually penetrated the victim during the commission of a felony, the prosecution must prove that defendant (1) entered the dwelling without permission, (2) that, at the time he committed the alleged sexual assault, he must have entered the dwelling, was present inside, or was leaving the dwelling, and (3) that, at the time defendant entered the dwelling, another person was lawfully present in the dwelling.[2] See MCL 750.520b(1)(c). To accomplish the crime of CSC-I under MCL 750.520b(1)(f), the jury was instructed that the prosecution must prove that defendant caused "personal injury" to the victim and used "force or coercion . . . to accomplish sexual penetration." MCL 750.520b(1)(f). The jury was further informed that personal injury encompassed bodily injury or mental anguish.

To assess 50 points under OV 7 for excessive brutality, the trial court must determine that defendant's conduct was savage or cruel "beyond even the 'usual' brutality," *Rodriguez*, 327 Mich App at 578 n 2, that occurs during a CSC-I crime. The crime of CSC-I during the commission of first-degree home invasion could be accomplished by defendant entering the victim's home without her permission, while the victim was lawfully present inside, and sexually penetrating her while in the home. Further, defendant's conduct in holding the victim down, vaginally penetrating her, and causing her personal injury, either by inflicting mental anguish[3] or bodily injury, by biting either her breast or neck, meet the requirements of MCL 750.520b(1)(f). These actions illustrate the "usual" brutality found in the crime of CSC-I under MCL 750.520b(1)(f). However, in addition to these actions, defendant struck the victim in the side of the head, grabbed her by the hair, dragged her to the floor, slammed her head into the floor when she told him "[n]o," and forcefully pressed his forearm into her neck while she screamed for him to stop for a period that felt to the victim like "forever." Even without considering the conduct that occurred after defendant stopped penetrating the victim, defendant's conduct was excessively brutal. Accordingly, even if we accepted defendant's premise, the trial court did not err in assessing 50 points for OV 7.

Turning to defendant's argument that the trial court erred in considering conduct that occurred after defendant stopped penetrating the victim to score OV 7, we also disagree. Defendant relies on *People v Thompson*, 314 Mich App 703; 887 NW2d 650 (2016), and *McGraw*. In *Thompson*, we held that the trial court erred in assessing 50 points for OV 7 because the trial court relied on "conduct engaged in by [the] defendant throughout the two-year course of the sexual abuse, instead of confining its examination to conduct occurring during the sexual assault on February 24, 2013, which was the only criminal offense to which [the] defendant pleaded no contest." *Thompson*, 314 Mich App at 711. We further stated that the conduct the trial court relied upon, regardless of how deplorable, occurred before the sentencing offense, did not relate to the sentencing offense, and the prosecution chose to dismiss any other charges related to other sexual misconduct. *Id.* at 712. In *McGraw*, the defendant pleaded guilty to multiple counts of breaking and entering a building in exchange for the dismissal of other charges, including fleeing and eluding police. 484 Mich at 122-123. Our Supreme Court held that the defendant could not be

---

[2] The jury acquitted defendant of first-degree home invasion.

[3] The victim testified about suicidal ideation and the negative impacts of the sexual assault on her life.

assessed 10 points for OV 9 for putting two or more people in danger while fleeing from the scene of the crime because the crime of breaking and entering was already complete, and the prosecution should not have dismissed the charge of feeling and eluding if it wanted the defendant to be punished for that crime. *McGraw*, 484 Mich at 134-135.

We conclude that *Thompson* and *McGraw* are both distinguishable from this case. In *Thompson*, the conduct relied upon to assess 50 points for OV 7 spanned a two-year period, and we had no means to evaluate whether the conduct considered even occurred on the same day as the sexual assault at issue. In *McGraw*, the trial court relied on conduct arising from a completely separate criminal transaction occurring after the crime of breaking and entering had clearly been completed. Here, as soon as defendant stopped penetrating the victim, he physically dragged her approximately 20 feet to the bathroom by grasping her hair, threw her into the bathtub, striking the back of her head on the faucet, and turned on the water. Defendant then masturbated until he ejaculated on her.

Defendant's argument that any conduct after penetration cannot be considered when scoring OV 7 lacks merit. Under defendant's reading of the statute, when scoring OV 7, no conduct could be considered in criminal sexual conduct cases other than conduct engaged in during penetration. Defendant has provided no support for his contention that the trial court could not consider conduct that was a continuous part of the same sexual assault against the victim. Accordingly, the trial court did not err in considering defendant's conduct in dragging the victim to the bathroom by the hair, throwing her in the bathtub, causing her to hit her head, and ejaculating on her because this all occurred in close proximity to the sexual penetration and was a continuation of defendant's sexual assault against the victim.

In any event, defendant's conduct warrants assessing 50 points for OV 7 because it was excessively brutal. As already discussed, considering defendant's conduct in the living room when he sexually penetrated the victim and the continuous conduct in the bathroom, the trial court did not clearly err in concluding that defendant engaged in conduct causing extreme humiliation for his own gratification, conduct beyond the minimum required to commit the offense, and conduct intended to make the victim's fear or anxiety greater by a considerable amount.

D. OV 10

Defendant argues that the trial court erred in assessing 15 points for OV 10 because defendant did not engage in predatory conduct before the sentencing offense.[4] We disagree.

OV 10 is scored for the exploitation of a vulnerable victim. MCL 777.40(1). A court must assess 15 points when predatory conduct is involved. MCL 777.40(1)(a). " 'Predatory conduct' means preoffense conduct directed at a victim . . . for the primary purpose of victimization." MCL 777.40(3)(a). " 'Exploit' means to manipulate a victim for selfish or unethical purposes." MCL 777.40(3)(b). " 'Victimize" is defined as "to make a victim of." *People v Cannon*, 481 Mich 152, 161; 749 NW2d 257 (2008) " '[V]ictim' is defined as '1. a person who suffers from a destructive

---

[4] Defendant recognizes that scoring 5 points was appropriate under MCL 777.40(1)(c) ("[t]he offender exploited a victim who was intoxicated . . . .")

or injurious action or agency 2. a person who is deceived or cheated[.]' " *Id.* (ellipsis omitted). "[P]oints should be assessed under OV 10 only when it is readily apparent that a victim was 'vulnerable,' i.e., was susceptible to injury, physical restraint, persuasion, or temptation." *Id.* at 158, citing MCL 777.40(3)(c). The trial court should consider the following factors when determining whether a victim was vulnerable under OV 10:

> (1) the victim's physical disability, (2) the victim's mental disability, (3) the victim's youth or agedness, (4) the existence of a domestic relationship, (5) whether the offender abused his or her authority status, (6) whether the offender exploited a victim by his or her difference in size or strength or both, (7) whether the victim was intoxicated or under the influence of drugs, or (8) whether the victim was asleep or unconscious. The mere existence of one of these factors does not automatically render the victim vulnerable. [*Id.* at 158-159.]

However, "absence of one of the factors for determining whether a victim was vulnerable . . . does not preclude a finding of victim vulnerability when determining whether it is appropriate to assess 15 points for predatory conduct. Rather, the evidence must show merely that it was readily apparent that the victim was susceptible to injury, physical restraint, persuasion, or temptation." *Id.* at 158 n 11.

In *Cannon*, our Supreme Court also concluded that a court may assess 15 points for OV 10 if it can answer the following questions in the affirmative:

> (1) Did the offender engage in conduct before the commission of the offense?
>
> (2) Was this conduct directed at one or more specific victims who suffered from a readily apparent susceptibility to injury, physical restraint, persuasion, or temptation?
>
> (3) Was victimization the offender's primary purpose for engaging in the preoffense conduct? [*Id.* at 161-162.]

The Court further directed that "the sentencing judge must determine if there was preoffense conduct directed at a victim for the primary purpose of victimization." *Id.* at 159 (quotation marks omitted). But the Court has clarified that " ' predatory conduct' . . . does not encompass *any* 'preoffense conduct,' but rather only those forms of 'preoffense conduct' that are commonly understood as being "predatory" in nature, e.g., lying in wait and stalking, as opposed to purely opportunistic criminal conduct or 'preoffense conduct involving nothing more than run-of-the-mill planning to effect a crime or subsequent escape without detection.' " *People v Huston*, 489 Mich 451, 462; 802 NW2d 261 (2011).

In this case, the trial court made the following findings regarding OV 10:

I think the testimony showed that this was clearly predatory conduct. He left the apartment when he was there with other people and went back when he knew the victim was going to be alone. Further, he knew the victim was drinking and also he had provided her with drugs.

First, it is clear that the victim was vulnerable. According to the victim, defendant provided her victim with two Neurontin while she was drinking. This conduct was directed specifically at the victim. There is no dispute that the victim was under the influence of alcohol and drugs at the time defendant sexually assaulted her. Thus, the victim was vulnerable, i.e., she was readily susceptible to injury, physical restraint, persuasion, or temptation.

Second, we also conclude that the trial court did not err when it determined that defendant engaged in predatory conduct. The evidence demonstrates that defendant arrived at the victim's apartment with Wesley and Klare. The victim had never met defendant previously. During the time everyone spent together, they split a fifth of vodka and drank from a second bottle. According to the victim, when defendant told her that he had Neurontin pills, the victim traded him a shot of vodka for a Neurontin. When defendant offered the victim another Neurontin, she told defendant that she would not have sex with him in exchange for the pill. The victim explained that typically one providing prescribed medication expected renumeration in some form. Defendant then gave her the Neurontin without requiring anything in exchange. After about an hour and a half, the victim told everyone they had to leave. Soon after, the victim realized that her alcohol and cigarettes were gone. The victim called Wesley and asked him to return her things. He said that he did not have them. Approximately 20 minutes later, defendant walked through the door. The victim asked him if he had her alcohol and cigarettes. Defendant did not respond, but immediately hit her and proceeded to sexually assault her.

Defendant later told the police that he obtained the Neurontin from Wesley's grandmother. Defendant recognized that the Neurontin was an 800-milligram dose, "one of the stronger ones you can get." Defendant testified that Neurontin "just kind of makes you more intoxicated when you drink." When the police asked defendant what type of high could occur, defendant explained, "you can get f***** up off of taking a couple of those and drinking." Defendant later added: "Yeah, it's a nerve medicine. Trust me . . . . Trust me, you take three of those . . . three of those and drink yourself a beer and watch what happens. You're going to be sitting there thinking you just drank six beers." Indeed, defendant described the victim as "f***** up on all the Neurontins . . . ." And, after defendant left the apartment and the victim did not respond to his attempt to contact her, he "figured she just passed out." Although the victim testified that she consumed a single Neurontin, after her first attempt had failed, and that it had no effect on her, defendant testified that he gave her "at least three . . . ." Furthermore, the victim did not think that defendant gave anyone else Neurontin. This evidence was sufficient to score OV 10 at 15 points.

However, defendant argues that there could be no predatory conduct because the victim voluntarily took the pills and consumed alcohol. Therefore, according to defendant, he only engaged in exploiting the victim's intoxication, warranting at most a 5-point score. Again, the record belies this contention. Although the victim voluntarily ingested drugs and alcohol, defendant requested a trade for the first Neurontin pill. As to the second pill, after the victim refused to provide sex in exchange for this prescription medication before defendant provided her another Neurontin pill gratis. In light of defendant's knowledge regarding the effects of combining alcohol and Neurontin, it could be reasonably inferred that defendant anticipated that consumption of the Neurontin pills would reduce the victim's consciousness, facilitating a sexual assault. Defendant's awareness that the victim would be alone later in the evening further supports this inference. See *Hardy*, 494 Mich at 440 n 26 (stating that circumstantial evidence proven by a

preponderance of the evidence may support scoring of a sentencing variable). Therefore, we find no error in scoring OV 10 at 15 points.

E. OV 13

Defendant argues that the trial court erred in assessing 25 points for OV 13 because he did not commit three felonious acts against a person within a five-year period. We agree.

"Under MCL 777.43, the trial court must score points under OV 13 on the basis of a defendant's felonious acts that constitute a continuing pattern of criminal behavior." *People v Bemer*, 286 Mich App 26, 33; 777 NW2d 464 (2009). "If there was no pattern of felonious criminal activity, the trial court must score OV 13 at zero points." *Id.*, citing MCL 777.43(1)(g). The trial court must assess 25 points when the sentencing offense "was part of a pattern of felonious criminal activity involving 3 or more crimes against a person." MCL 777.43(1)(c); *Bemer*, 286 Mich App at 33. "When determining the appropriate points under this variable, 'all crimes within a 5-year period, including the sentencing offense, shall be counted regardless of whether the offense resulted in a conviction.' " *Bemer*, 286 Mich App at 33, quoting MCL 777.43(2)(a). Multiple concurrent offenses arising out of the same incident are properly used in scoring OV 13. *People v Gibbs*, 299 Mich App 473, 488; 830 NW2d 821 (2013).

During the initial sentencing hearing, the trial court assessed 25 points for OV 13 relying on the instant conviction and previous crimes of felony murder, MCL 750.316(1)(b), and concealing the death of an individual, MCL 333.2841(3). Defendant correctly argues, and the prosecution concedes, that concealing the death of an individual cannot be used to score 25 points for OV 13 because it is a crime against public order. MCL 777.13k. Thus, the trial court erred in relying on this crime to assess 25 points.

Defendant also correctly argues that his prior charge for attempted resisting and obstructing a police officer could not be used to score 25 points for OV 13. Under MCL 750.81d(1) and MCL 750.479(2),[5] a conviction for resisting and obstructing a police officer is a felony punishable by not more than two years' imprisonment. Under MCL 750.92(3), a conviction for attempted resisting and obstructing a police officer is a misdemeanor punishable by not more than "½ of the greatest punishment which might have been inflicted if the offense so attempted had been committed." "The Code of Criminal Procedure defines a 'felony' as 'a violation of a penal law of this state for which the offender . . . may be punished by imprisonment for more than 1 year or an offense expressly designated by law to be a felony.' " *People v Jackson*, 504 Mich 929, 929; 930 NW2d 388 (2019), quoting MCL 761.1(f). Thus, the attempted crime of resisting and obstructing a police officer was not punishable by more than one year in prison. Therefore, this offense is a misdemeanor and could not be used to assess 25 points for OV 13.

However, the prosecution argues that a score of 25 points was appropriate because defendant committed the crime of larceny from a person within a five-year period. Larceny from

_____

[5] It is not clear under which subsection defendant was convicted of attempted resisting and obstructing a police officer, but it does not affect the outcome here because both impose a punishment of not more than two years' imprisonment.

a person is a felony and punishable by imprisonment of not more than 10 years. MCL 750.357. Moreover, it is designated a crime against a person. MCL 777.16r. Defendant's presentence investigation report states that he was arrested for, and charged with, the crime of larceny from a person on May 10, 2016. However, on May 24, 2016, this charge was dismissed because the prosecution's witness was not available. During the sentencing hearing, the prosecution neither presented evidence that defendant committed a larceny from a person nor argued that this crime could be considered to assess 25 points for OV 13. Moreover, the trial court did not consider larceny from a person as a possible crime for assessing 25 points for OV 13. Thus, the prosecution only presented evidence that defendant committed two felonious crimes against a person—CSC-I and felony murder—within a five-year period. Therefore, the trial court erred in assessing 25 points for OV 13.

However, defendant is not entitled to resentencing. Removing 25 points for OV 13, reduces defendant's OV total from 140 to 115. Defendant's OV Level remains OV Level VI, and his minimum sentencing guidelines range continues to be 225 to 468 months (18 years and 9 months to 39 years) or life. MCL 777.62. Accordingly, defendant is not entitled to resentencing. *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006) ("Where a scoring error does not alter the appropriate guidelines range, resentencing is not required.").

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also argues that he is entitled to resentencing because defense counsel provided ineffective assistance by failing to object to the scoring of OVs 7, 10, and 13. We disagree.

In order to prevail on a claim of ineffective assistance of counsel, a defendant has the burden of establishing that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Eisen*, 296 Mich App 326, 329; 820 NW2d 229 (2012) (quotation marks omitted). "[T]rial counsel cannot be faulted for failing to raise an objection or motion that would have been futile." *People v Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998). Accordingly, counsel's failure to advance a meritless challenge to a properly scored OV "does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 204-205; 793 NW2d 120 (2010).

In this case, defendant failed to establish that defense counsel's performance fell below the objective standard of reasonableness for his failure to object to the scoring of OV 7 because the objection would have been futile. *Id.* The evidence illustrated defendant's excessive brutality. Moreover, defendant has failed to present support for his contention that, in the context of criminal sexual conduct, only conduct occurring at the time of penetration can be considered when scoring OV 7.

Likewise, defense counsel's failure to challenge the trial court's decision to assess 15 points for OV 10 after determining that defendant engaged in predatory conduct lacks merit for the reasons we have discussed. *Id.* Defendant gave the victim Neurontin pills, knowing that they

were strong and knowing that they would exponentially increase the victim's level of intoxication when combined with the alcohol she consumed.

Finally, regardless of whether counsel's performance was deficient for failing to object to the scoring of OV 13, defendant cannot demonstrate that, but for defense counsel's failure to object, defendant's minimum sentencing guidelines range would have been different. In other words, defendant cannot demonstrate that defense counsel's failure to object to the scoring of OV 13 prejudiced him.[6] *Francisco*, 474 Mich at 89 n 8.

Affirmed.

/s/ Anica Letica
/s/ Michael J. Riordan
/s/ Thomas C. Cameron

---

[6] Notably, even if defendant's current challenge to OV 13 had been accepted by the sentencing court, the prosecution undoubtedly would have had an opportunity to establish that the dismissed larceny from a person charge occurred by a preponderance of the evidence, resulting in the 25-point score remaining intact. MCL 777.43(2)(a).