*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* K. HEMMEKE, Minor.

UNPUBLISHED
May 18, 2026
11:08 AM

No. 375662
Lake Circuit Court
Family Division
LC No. 23-001930-NA

Before: MURRAY, P.J., and REDFORD and RICK, JJ.

PER CURIAM.

Respondent appeals as of right the trial court order terminating her parental rights to her minor child under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist) and MCL 712A.19b(3)(j) (reasonable likelihood of harm). We affirm.

## I. BACKGROUND

In February 2023, petitioner, the Department of Health and Human Services (DHHS), requested the court to remove the child from the care of respondent and the child's father.[1] Petitioner was already involved with the family as the majority of respondent's other children had been removed from the home and placed in a limited guardianship with their paternal grandmother. The petition alleged risks of harm from exposure to domestic violence and illegal substances, and it highlighted a domestic violence incident that occurred in front of the child that "destroyed" the family home. Respondent continuously denied any substance abuse issues while simultaneously testing positive for methamphetamine and amphetamine. The petition expressed concerns that respondent's substance abuse was causing her to fail to take the child to medical appointments.

---

[1] The child's father voluntarily relinquished his parental rights. Father initially filed an appeal of that decision, which resulted in a consolidation order with this appeal. However, father ultimately dismissed his appeal, and this Court entered an order of deconsolidation. See *In re K Hemmeke Minor*, unpublished order of the Court of Appeals, entered December 5, 2025 (Docket No. 375663).

After a preliminary hearing, the trial court authorized the petition, placed the child with DHHS for care and supervision, ordered that reasonable efforts to reunify the family be made, and allowed respondent supervised parenting time.

Petitioner offered respondent services for nearly two years. The trial court held periodic hearings at which the court determined that petitioner had made reasonable efforts to address the barriers toward reunification. Specifically, petitioner identified domestic violence, housing instability, and substance abuse as the major barriers to be addressed by respondent's case service plan. In June 2023, respondent received a psychological evaluation that included several cognitive assessments. The results of these assessments indicated that respondent was in the range of borderline functioning intelligence. Several recommendations on how to accommodate respondent's cognitive issues were made, including use of simple vocabulary and demonstrative learning in lieu of verbal explanations.

Throughout the lower court proceedings, respondent failed to appear at multiple hearings, including the termination hearing. She requested an adjournment, citing a medical emergency that she asserted had occurred the day before the hearing took place. However, the trial court denied this request because it did not believe that the claim of a medical emergency was genuine. Moreover, no evidence was presented to support respondent's claims, and the trial court heard testimony that respondent deliberately chose not to attend the hearing.

Outside of this denial, the trial court had previously ordered multiple adjournments of its own accord. Two adjournments were ordered because the child's father, who was sentenced to a jail term on unrelated criminal charges midway through the child protective proceedings, was unable to participate in court hearings because of technical issues.

It was also reported that respondent was homeless at various points during the pendency of this case, even though she purchased a fifth-wheel trailer in which to live. The trailer did not have running water nor heat. Moreover, there were concerns that the trailer was parked on property that the police had warned was linked to methamphetamine sales and usage. In the last reporting period before the termination hearing, respondent was delaying or evading attempts by DHHS to assess the safety of the trailer for the possible reunification between respondent and the child. It was also reported that respondent did not obtain full-time employment and relied on "scrapping" for income.

The trial court heard testimony regarding respondent's barriers to reunification and the services that were offered to her, including several services for respondent's methamphetamine use. This also included petitioner's attempt to address services that were recommended from respondent's psychological evaluation. It was reported, however, that respondent did not cooperate with the accommodations because, she stated, the service plan was "full of lies." Respondent also did not engage with employment-assistance programs, housing services, and domestic violence services. Although respondent completed an inpatient drug rehabilitation program, she tested positive for methamphetamine and amphetamines immediately after she was released. She was also testing positive two weeks before the termination hearing occurred. In total, respondent tested positive for methamphetamine and amphetamine 72 times during the pendency of this case. There were also concerns that respondent had been under the influence of

these substances during parenting times. Accordingly, witnesses reported that respondent did not benefit from her parenting classes.

The trial court ruled that petitioner had made reasonable efforts toward reunification, and that respondent failed to benefit from those services. The court found statutory grounds for the termination of respondent's parental rights under MCL 712A.19b(3)(c)(*i*), and (3)(j), citing respondent's failure to benefit from her case service plan as demonstrated by her ongoing substance abuse issues and her decision to continue living with the child's father. The court found that both of these issues placed the child at a risk of harm if returned home. The court next determined that termination was in the child's best interests given her young age and need for stability. The court found no issues with the child's relative placement. The trial court entered an order terminating respondent's parental rights, and it advised her that she had 14 days to appeal. Respondent now appeals.

## II. ANALYSIS

### A. ADVICE OF APPELLATE RIGHTS

We first address respondent's argument that the trial court erred in giving her advice regarding her appellate rights. Specifically, the trial court informed her counsel that she had 14 days to file an appeal by right to the termination order. This was plain error because the Michigan Court Rules allow 21 days for an appeal by right to a termination order, and the trial court provided inaccurate information. See MCR 3.977(J)(4)(c); 3.993(A)(5), (C)(I); 7.204(A)(1); *In re Barber/Espinoza*, ___ Mich ___, ___; ___ NW3d ___ (2025) (Docket No. 167745); slip op at 15. However, the mere fact that plain error has occurred does not necessitate reversal unless the respondent demonstrates that the plain error affects her substantial rights. *Id.* at ___; slip op at 16. Further, this issue is unpreserved because she failed to raise it as an issue in the trial court and unpreserved constitutional errors, including structural errors, are reviewed for plain error affecting substantial rights. *People v King*, 512 Mich 1, 10; 999 NW2d 670 (2023). On appeal, respondent cannot demonstrate how her substantial rights—in particular, her appellate rights—were affected by the inaccurate advice of rights. That is because her claim of appeal has been accepted by this Court for consideration. *In re Barber/Espinoza*, ___ Mich at ___; slip op at 16. Therefore, any error by the trial court in this instance does not require reversal.

### B. REASONABLE EFFORTS

Respondent next contends that DHHS did not make reasonable efforts toward reunification in this case. Respondent also contends that DHHS did not make active efforts to accommodate her intellectual disabilities under the Americans with Disabilities Act (ADA), 42 USC 12101 *et seq*. We disagree.

This issue is unpreserved because respondent did not object or indicate that her services were inadequate. See *In re Atchley*, 341 Mich App 332, 337; 990 NW2d 685 (2022). This Court reviews unpreserved claims related to a trial court's decision regarding reasonable efforts for plain error affecting substantial rights. *In re Pederson*, 331 Mich App 445, 463; 951 NW2d 704 (2020). In order to avoid forfeiture under the plain-error rule, three requirements must be met: (1) the error must have occurred; (2) the error was plain, i.e., clear or obvious; and (3) the plain error affected

substantial rights. *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011). An error affects substantial rights "if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008) (citation omitted). Reversal is appropriate only if the plain error "seriously affect[ed] the integrity, fairness, or public reputation" of the proceedings." *In re Mota*, 334 Mich App 300, 311; 964 NW2d 881 (2020) (citation omitted).

Generally, "[DHHS] has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks/Brown*, 500 Mich 79, 85; 893 NW2d 637 (2017). "As part of these reasonable efforts, [DHHS] must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *Id*. at 85-86. Additionally, if a respondent has a recognized disability under the ADA, DHHS is required to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless . . . the modifications would fundamentally alter . . . the service provided." *In re Sanborn*, 337 Mich App 252, 263; 976 NW2d 44 (2021) (quotation marks and citation omitted; ellipsis in original). "When challenging the services offered [on the basis that DHHS violated the ADA], a respondent must establish that he or she would have fared better if other services had been offered." *Id.* at 264.

The record in the present case indicates that petitioner was aware of respondent's intellectual functioning following her psychological assessment. Several recommendations to accommodate respondent's conditions were made. Even though the evaluator specifically testified that respondent did not have an intellectual disability, once a possible disability is known, DHHS cannot be "passive in [its] approach . . . as far as the provision of accommodations is concerned." *In re Hicks/Brown*, 500 Mich at 88 (quotation marks and citation omitted). In this case the evidence presented at the termination hearing indicated that petitioner took the recommendations from the psychological evaluation and implemented them in the service plan. Specifically, respondent was provided a written summary to explain the Parent-Agency Treatment Plan, respondent's parenting education classes adopted accommodations to educate respondent in a simple and clear format, and respondent was referred to employment service providers who could find her a job suited to her capabilities. However, respondent did not take advantage of these accommodations. One case worker testified that she believed that respondent understood what was being asked of her but refused to cooperate with her service plan despite the accommodations.

Further, respondent has failed to provide any alternative services that would have helped her to progress toward reunification. See *In re Sanborn*, 337 Mich App at 266. Because the record indicates that petitioner fulfilled its obligations under the ADA to accommodate respondent's intellectual disabilities, and because respondent has not demonstrated what alternative accommodations would have somehow been more helpful, the trial court did not err in finding that petitioner provided reasonable accommodations in light of respondent's alleged disability. *Id.* at 263.

Respondent's case service plan was also designed to address barriers toward reunification that included ongoing substance abuse issues, lack of stable housing, and domestic violence issues. The largest issue was respondent's substance abuse. Petitioner offered respondent different counseling services to learn how to cope with her substance abuse disorder, she was referred to support groups for substance use, and she was referred to Community Mental Health CMH for a

multitude of services. In particular, CMH assisted respondent with case services and medication management. Respondent attended and completed an inpatient rehabilitation program.

These services were unsuccessful. Respondent consistently tested positive for methamphetamines and amphetamine 72 times during the lower court proceedings. Moreover, respondent continued to test positive after she completed the rehabilitation program. The court heard testimony that petitioner offered additional services such as transportation services, money for vehicle repairs, housing referrals, and services related to domestic violence. Petitioner referred respondent for mental health therapy, but respondent was terminated from this service because of her lack of participation. There was not a single instance in which the trial court found that petitioner had not made reasonable efforts toward reunification. The trial court did not plainly err in determining that petitioner offered more than reasonable efforts toward reunification, including additional accommodations for her cognitive conditions, that respondent simply ignored. *In re Pederson*, 331 Mich App at 463; *In re Sanborn*, 337 Mich App at 266.

### C. INEFFECTIVE ASSISTANCE OF COUNSEL

Respondent next argues that she received ineffective assistance of counsel because her trial attorney did not object to the adequacy of efforts made by petitioner and failed to raise her rights under the ADA.[2] We disagree.

Claims of ineffective assistance of counsel are mixed questions of fact and law. *In re Casto*, 344 Mich App 590, 610; 2 NW3d 102 (2022). This Court reviews for clear error a trial court's factual findings, and questions of constitutional law are reviewed de novo. *Id.* "Clear error exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *Id.* (quotation marks and citation omitted). When a party fails to preserve a claim of ineffective assistance of counsel, this Court's "review is limited to mistakes apparent on the record." *In re LT*, 342 Mich App 126, 133; 992 NW2d 903 (2022).

"It is well established in Michigan jurisprudence that the law governing ineffective assistance of counsel in the context of criminal proceedings applies by analogy to termination proceedings." *In re MJC*, 349 Mich App 42, 58-59; 27 NW3d 122 (2023) (citation omitted). "Therefore, reversal would be warranted if it is shown that (1) counsel's performance was deficient, falling below an objective standard of reasonableness, and that (2) the deficient performance prejudiced the respondent." *Id*. at 59 (quotation marks and citation omitted). To establish prejudice, a party claiming ineffective assistance "must show that but for counsel's deficient performance, a different result would have been reasonably probable." *In re Casto*, 344 Mich App at 621 (quotation marks and citation omitted). "The effective assistance of counsel is presumed, and a party claiming ineffective assistance bears a heavy burden of proving otherwise." *Id*. at 612. "Th[is] Court cannot substitute its judgment for that of counsel's on matters of litigation

---

[2] We decline to address respondent's argument that she received ineffective assistance of counsel because her attorney failed to challenge key witness testimony that prejudiced her at the termination hearing. On appeal, respondent fails to distinguish witness testimony that was prejudicial from testimony that was not. Therefore, this issue is abandoned. *In re Toler*, 193 Mich App 474, 477; 484 NW2d 672 (1992).

strategy, and counsel's performance must be judged based on the knowledge, expertise, and information reasonably available when counsel formulated and implemented the litigation strategy." *Id*. at 612.

In the present case, respondent's claim of ineffective assistance of counsel fails because she cannot show that her trial counsel's performance fell below an objective standard of reasonableness. Nor can she show that she was prejudiced by her trial counsel's performance. *In re MJC*, 349 Mich App at 58-59. She argues that her trial attorney failed to raise her ADA rights and did not question the adequacy of the services she received from petitioner.

But these arguments would have been futile. As stated above, the court heard expert testimony that respondent did not have an intellectual disability. Even if that were not the case, petitioner offered reasonable accommodations made on the basis of the recommendations provided from the psychological evaluation. But respondent was resistant to these efforts. Along similar lines, petitioner offered reasonable efforts to address all of respondent's barriers toward reunification, and the court determined that respondent failed to meaningfully participate in the services that was offered. Because respondent's claims of error with respect to her trial counsel's performance are premised on meritless arguments and futile objections, her claim of ineffective assistance of counsel does not warrant reversal. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010); *In re MJC*, 349 Mich App at 58-59.

### D. DUE PROCESS

Respondent next argues that her due-process rights were violated when the trial court adjourned hearings because it could not ensure the father's participation while he was incarcerated and because petitioner had failed to provide reports in a timely fashion. She also argues that her due-process rights were violated when the trial court denied her requests for adjournments. We disagree.

Respondent's arguments on this issue concern the trial court's adjournment decisions. Moreover, respondent preserved her arguments related to adjournment by making a request for the termination hearing to be rescheduled. *In re TK*, 306 Mich App 698, 703; 859 NW2d 208 (2014). This Court reviews for an abuse of discretion a trial court's decision to deny a motion for adjournment or continuance. *In re Utrera*, 281 Mich App at 8. A trial court abuses its discretion when its decision falls outside the range of principled outcomes. *In re TK*, 306 Mich App at 703.

Adjournments in child protective proceedings may be granted only: "(1) for good cause, (2) after taking into consideration the best interests of the child, and (3) for as short a period of time as necessary." MCR 3.923(G). Good cause for an adjournment exists when a party has shown "a legally sufficient or substantial reason" for the adjournment. *In re Utrera*, 281 Mich App at 11.

In this case, the court stated that it did not want to proceed with a hearing without having had a chance to provide each party an opportunity to review the latest report. MCR 3.976(D)(3) expressly states that "[t]he court shall ensure that all parties have had the opportunity to review the report and file objections before a dispositional order, a dispositional review order, or permanency planning order is entered." Furthermore, the trial court stated that it did not want to proceed

without father at two hearings while he was unable to attend because he was incarcerated. Courts have a duty to afford incarcerated respondent parents an adequate opportunity to participate in child protective proceedings. See *In re Mason*, 486 Mich 142, 152-155; 782 NW2d 747 (2010); MCR 2.004(F). In sum, these were both legally sufficient reasons that qualify as good cause to adjourn. *In re Utrera*, 281 Mich App at 11. In contrast, the trial court denied respondent's requests for adjournment after concluding that her claims of medical issues were not credible. Moreover, a caseworker testified that respondent informed her the day before the hearing was scheduled that she had no intention of attending. As such, the trial court did not abuse its discretion with respect to its adjournment decisions. *Id*. at 8.

## E. STATUTORY GROUNDS

Respondent argues next that the trial court clearly erred in finding that statutory grounds for the termination of her parental rights were demonstrated by clear and convincing evidence. We disagree.

"To terminate parental rights, a trial court must find by clear and convincing evidence that at least one statutory ground under MCL 712A.19b(3) has been established." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). This Court need not consider additional grounds for the trial court's decision if termination was supported by at least one statutory ground. *In re Jackisch/Stamm-Jackisch*, 340 Mich App 326, 333-334; 985 NW2d 912 (2022). This Court reviews trial court's factual findings and ultimate determinations on the statutory grounds for termination for clear error. *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296; 690 NW2d 505 (2004) (citation omitted).

Respondent's parental rights were terminated, in part, under MCL 712A.19(3)(c)(*i*) which provides:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

> (*i*) the conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

Termination of parental rights under this statutory ground is proper where "the totality of the evidence amply support that [the respondent] had not accomplished any meaningful change in the conditions" that led to the adjudication and would not be able to rectify those conditions within a reasonable time. *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009).

The record demonstrates that more than 500 days had passed since the adjudication before the termination hearing, and, therefore, the 182-day requirement of MCL 712A.19b3(c) was satisfied. Further, the caseworker testified that the ongoing barriers toward reunification included respondent's substance use, homelessness, employment, and domestic violence issues with father.

Of all these issues, substance abuse was cited as the most substantial issue that led to court involvement. To address this issue specifically, petitioner provided ample services. These included CMH services that involved case management and medication management assistance, a psychological evaluation, drug screenings, and an inpatient drug rehabilitation program.

The court acknowledged, respondent did complete the inpatient rehabilitation program. However, any progress respondent made with her treatment was lost as she continued to test positive for methamphetamine after the program was completed. As previously stated, respondent tested positive for this drug 72 times throughout the lower court proceedings.

Unfortunately, respondent also did not make any "meaningful change" with the barriers related to housing instability and domestic violence. *In re Williams*, 286 Mich App at 272. Respondent was homeless at times throughout the case until she purchased a fifth-wheel trailer to live in. However, the trailer was not suitable for habitation since it lacked running water and heat. Moreover, the trailer was located on a property associated with methamphetamine sales and usage. The court also heard testimony that respondent acted to interfere with home assessment efforts made by petitioner.

In sum, clear and convincing evidence was presented that respondent failed to make any "meaningful change" related to these three barriers toward reunification. *In re Williams*, 286 Mich App at 272. Therefore, the trial court did not clearly err finding that MCL 712A.19b(3)(c)(*i*) was established in this case through clear and convincing evidence. *In re White*, 303 Mich App at 709. Because the trial court did not clearly err in finding that this ground was established, we need not address the trial court's decision with respect to MCL 712A.19(b)(3)(j). *In re Jackisch/Stamm-Jackisch*, 340 Mich App at 333-334.

## F. BEST INTERESTS

Respondent's final argument is that the trial court clearly erred in finding that termination was in the best interests of the child through a preponderance of the evidence. We disagree.

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012) (citations omitted). Whether termination of parental rights is in the best interests of the child must be proven by a preponderance of the evidence. *In re Moss*, 301 Mich App at 90. The trial court must focus on the child, and not the parent, when making this determination. *In re Keillor*, 325 Mich App 80, 63; 923 NW2d 617 (2018).

Throughout the lower court proceedings, the child was placed with three different relatives. "A child's placement with relatives is a factor that the trial court is required to consider." *In re Atchley*, 341 Mich App at 347 (quotation marks and citation omitted). "Placement with a relative weighs against termination, but that fact is not dispositive given that a trial court may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests." *Id.* (quotation marks and citation omitted). On appeal, respondent argues that the fact that the child went through three separate relative placements indicates that termination was not in the child's best interests. But respondent offers no authority for this position and its bearing on

the trial court's determination regarding the child's best interests. *In re Toler*, 193 Mich App at 477.

Regardless, the court found each of the child's relative placements was sufficient for her needs. The court also found that the child needed stability and permanence. The court found further that the child was thriving in her current placement. The court stated that respondent had almost no bond with the child because she did not meaningfully participate in her parenting-time visits. This finding was supported by a caseworker's testimony that respondent appeared "disinterested" in visits when she was under the influence of substances. She testified that respondent did not bring anything for the child during those visits and that she was concerned that respondent was utilizing parenting times to use or sell drugs.

Further, a trial court's determination that a child's safety and well-being could not reasonably be assured in light of previous, unresolved issues that posed a risk of harm supports a finding that termination is in the best interests of a child. *In re VanDalen*, 293 Mich App at 142. The record suggests that the child was at risk of harm from respondent's methamphetamine use, housing instability, and domestic violence issues because those risks had not been mitigated by the time of the termination hearing. Therefore, the trial court did not clearly err in finding that termination of respondent's parental rights was in the child's best interests. *In re Olive/Metts*, 297 Mich App at 40.

Affirmed.

/s/ Christopher M. Murray
/s/ James Robert Redford
/s/ Michelle M. Rick