*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
May 29, 2026
9:08 AM

Plaintiff-Appellee,

v

No. 371210
Kent Circuit Court
LC No. 23-003367-FC

AARON JAMES EBY,

Defendant-Appellant.

Before: WALLACE, P.J., and LETICA and FEENEY, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(2)(b) (sexual contact committed by an individual 17 years of age or older against an individual less than 13 years of age). Defendant was sentenced as a third-offense habitual offender, MCL 769.11, to 85 months' to 30 years' imprisonment. We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

This case arises out of defendant's sexual abuse of the victim, his stepdaughter. Defendant married the victim's mother in 2015, when the victim was seven years old. Defendant then lived with the victim's family, including her mother, brother, and sister in Cutlerville. One day, when the victim was sleeping on an air mattress in the living room, and the rest of the family was asleep in their respective rooms, defendant came into the living room and touched the victim's vagina. Defendant stopped and left the room when he heard the family's dog enter the living room.

According to the victim, on another occasion, defendant digitally penetrated her vagina. The family's living situation was unstable throughout the victim's childhood. When she was 10 or 11 years old, the family was living in a Motel 6. When the victim was playing a video game in the family's motel room, defendant rubbed the victim's thighs and touched her breasts and vagina. When the family lived at a different motel, defendant pressed a vibrator that belonged to the victim's mother against the victim's vagina.

At some point, defendant put his penis between the victim's thighs and grinded against her. When the victim was 12 years old, the family moved into a house where another family lived.

This house was in Ottawa County. According to the victim, at that house, defendant engaged in oral and penile penetration.

Defendant was charged with three counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(2)(b), specifically sexual penetration described as "digital/genital opening" "penile/genital opening," "oral/ penile," and one count of CSC-II. With respect to all of the charges, the prosecution alleged that they occurred at the Cutlerville residence or at the Motel 6.

During jury selection, the trial court instructed the venire to listen to the questions posed to the other potential jurors because they would be expected to answer these questions if called to the jury box. The trial court, the prosecution, and defendant's trial counsel questioned the prospective jurors. Eventually, the parties indicated that they had sufficiently questioned the initial panel. Defendant's trial counsel, after conferring with co-counsel,[1] stated that he had no further questions.

After a break, the trial court gave the parties an opportunity to challenge potential jurors. New potential jurors were then seated. The trial court stated, "The good news is the questions will be limited to our new jurors that have just arrived." The trial court asked the previous questions to the newly seated potential jurors, and the prosecution and defense[2] were given the opportunity to ask follow-up questions to these potential jurors. The process was repeated until the trial court, the prosecution, and defendant's trial counsel were satisfied, then the jury was sworn in.

Following the prosecutor's presentation of the proofs, defendant moved for a directed verdict of not guilty on the "penile/genital opening" and "oral/ penile," counts of CSC-I because the alleged incidents giving rise to these charges occurred outside of Kent County. The trial court granted this motion. The jury acquitted defendant of the remaining count of CSC-I but found him guilty of CSC-II.

After the trial, a presentence investigation report was completed. Defendant objected to offense variable (OV) 13, claiming it should be scored at zero instead of 25 points because defendant could not be punished for acquitted conduct. The prosecution countered that the score of 25 points for OV 13 was appropriate because two of the CSC-I counts were dismissed on jurisdictional grounds, allowing them to be considered for purposes of establishing a pattern of three or more instances of criminal conduct.

---

[1] At trial, defendant was represented by two attorneys.

[2] Defense counsel acknowledged that he would ask questions of the newly called prospective jurors. But he noted that he would be speaking to "the whole panel" and invited other jurors to "jump in." The trial court instructed defense counsel to question the "new jurors." Defense counsel did not object to this limitation at trial. But when a newly called juror expressed a desire to hear "both sides" of the sexual contact, the trial court advised all the prospective jurors that defendant did not have to testify and inquired whether they could follow that instruction. Although the trial court sought to limit questioning to new jurors, it interjected and expanded the inquiry when a new issue was raised.

At the sentencing hearing, the trial court agreed that the acquitted conduct and the alleged incidents in Ottawa County could not be considered. Because the transcripts were not yet available, the trial court watched the video of the victim's testimony and found it to be credible. The trial court determined that the victim's testimony provided evidence of three or more instances of criminal conduct committed by defendant against her without considering the alleged conduct giving rise to the acquitted and dismissed counts. The trial court found that OV 13 was properly scored at 25 points, resulting in a minimum sentence range of 29 to 85 months. Because defendant was the victim's stepfather, the trial court sentenced defendant at the top of the guideline range. This appeal followed.

While the appeal was pending, defendant moved this Court to remand for an evidentiary hearing regarding whether defendant was deprived of the effective assistance of counsel when his trial counsel failed to object to the trial court's limitation of voir dire. This Court denied the motion without prejudice. *People v Eby*, unpublished order of the Court of Appeals, entered February 7, 2025 (Docket No. 371210).

## II. VOIR DIRE

Defendant argues that the trial court erred by limiting the scope of voir dire. We disagree.

Generally, this Court reviews de novo a challenge to the jury selection process. *People v Fletcher*, 260 Mich App 531, 554; 679 NW2d 127 (2004). When a defendant fails to challenge the specificity of the trial court's voir dire questioning, the issue, unraised in the trial court, is reviewed for plain error. *People v Helmer*, ___ Mich App ___, ___; ___ NW3d ___ (2026) (Docket No. 369063), slip op at 8-9. "In order to receive relief on a forfeited claim of constitutional error, a defendant must prove that (1) error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected substantial rights." *People v Davis*, 509 Mich 52, 67; 983 NW2d 325 (2022) (quotation marks and citation omitted). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "[R]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Davis*, 509 Mich at 67-86 (quotation marks and citation omitted).

"[A] criminal defendant has a constitutional right to be tried by an impartial jury . . . ." *People v Miller*, 482 Mich 540, 547; 759 NW2d 850 (2008), citing US Const, Am VI; Const 1963, art 1, § 20. "[J]urors are presumed to be . . . impartial, until the contrary is shown." *Miller*, 482 Mich at 550 (quotation marks and citation omitted; second alteration in original). "The burden is on the defendant to establish that the juror was not impartial or at least that the juror's impartiality is in reasonable doubt." *Id*. "The function of voir dire is to elicit sufficient information from prospective jurors to enable the trial court and counsel to determine who should be disqualified from service on the basis of an inability to render decisions impartially." *People v Sawyer*, 215 Mich App 183, 186; 545 NW2d 6 (1996). In other words, the trial court's role is "to elicit enough information during voir dire to make an intelligent assessment of bias." *People v Tyburski*, 445 Mich 606, 623; 518 NW2d 441 (1994) (Opinion by MALLETT, J.). Trial courts have "wide

discretion in the manner they employ to achieve the goal of an impartial jury." *Sawyer*, 215 Mich App at 186-187 (quotation marks and citation omitted).

"To the extent that [a] defendant maintains that the process did not result in an impartial jury, [the] defendant has the burden to show that a particular juror was not impartial or, at the very least, that the juror's impartiality was in reasonable doubt." *People v Haynes*, 338 Mich App 392, 411; 980 NW2d 66 (2021). A conviction may not be reversed for that reason unless the totality of circumstances indicates that "the defendant's trial was not fundamentally fair and held before a panel of impartial, indifferent jurors." *People v Cline*, 276 Mich App 634, 638; 741 NW2d 563 (2007) (quotation marks and citations omitted).

Defendant asserts that the trial court limited questions to only the new potential jurors after the first peremptory challenges were made. Defendant contends that the trial court made this limitation by surprise and without warning when it stated, "The good news is the questions will be limited to our new jurors that have just arrived." We disagree because defendant's argument mischaracterizes the record.

First, the trial court and the parties probed into the potential bias of the initially seated potential jurors. Defendant's trial counsel even expressed his satisfaction with the voir dire of the initially seated potential jurors. Following a break, the trial court advised the jurors that the "initial round of questioning has concluded." After jurors were dismissed by the parties for cause or with peremptory challenges, the trial court instructed additional potential jurors to be seated. The trial court requested that these potential jurors answer the initial questions that were relevant to them. That was the context for the trial court's statement that the questions would be limited to the jurors that had just arrived. In other words, the initially seated potential jurors had already answered the questions, so these questions did not need to be asked again to them. Further, this context demonstrates that there was no surprise in the process for questioning jurors. Rather, the procedure was agreed upon, and defendant's counsel even expressed his desire for the initial round of questioning to be concluded. And, at the end of the jury selection process, defendant's trial counsel even stated that he was "satisfied," with the jury before it was sworn in.

Defendant asserts that this surprise denied him a fair trial because his counsel would have "questioned the panel in greater detail in an attempt to cover all possible bases . . . ." It is unclear what "details" or "bases" additional questions would uncover when the potential jurors were questioned at length. Specifically, defendant identifies no bias or partiality on any jurors' part. A bald proclamation alleging deficient voir dire questioning is insufficient to demonstrate plain error. *Helmer*, ___ Mich App at ___; slip op at 9. The trial court elicited "enough information during voir dire to make an intelligent assessment of bias." *Tyburski*, 445 Mich at 623. As in *People v Vaughn*, 491 Mich 642, 668; 821 NW2d 288 (2012), "[a] review of the circuit court transcript during defendant's voir dire shows that both parties engaged in a vigorous voir dire process, that there were no objections to either party's peremptory challenges of potential jurors, and that each party expressed satisfaction with the ultimate jury chosen."

Defendant alternatively argues that he was denied effective assistance of counsel when his counsel failed to object to the limited voir dire of the prospective jurors. We disagree.

"A claim of ineffective assistance of counsel presents a mixed question of fact and constitutional law." *People v Isrow*, 339 Mich App 522, 531; 984 NW2d 528 (2021) (quotation marks and citation omitted). "All findings of fact are reviewed for clear error, while the legal questions are reviewed de novo." *Id*. (quotation marks and citation omitted). De novo review means that we must "review the issues independently, with no required deference to the trial court." *People v Beck*, 504 Mich 605, 618; 939 NW2d 213 (2019). When the trial court does not conduct a *Ginther*[3] hearing, our review "is limited to mistakes that are apparent on the record." *People v Anderson*, 322 Mich App 622, 628; 912 NW2d 607 (2018) (quotation marks and citation omitted).

A criminal defendant has a right to a fair trial, and therefore effective assistance of counsel. *Isrow*, 339 Mich App at 531, citing US Const, Am VI, and Const 1963, art 1, § 17. "To establish ineffective assistance of counsel, a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *People v Shaw*, 315 Mich App 668, 672; 892 NW2d 15 (2016), citing *Strickland v Washington*, 466 US 668, 687-688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 US at 694.

"Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Eisen*, 296 Mich App 326, 329; 820 NW2d 229 (2012) (quotation marks and citation omitted). "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *People v Petri*, 279 Mich App 407, 411; 760 NW2d 882 (2008) (quotation marks and citation omitted). "In examining whether defense counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

The jurors provided information about whether any potential jurors knew the parties or the witnesses in the case, had any close friends or relatives that had been a victim or perpetrator of sexual abuse, could be fair or impartial, had served on a jury before, had any close friends or relatives who were a victim of another crime, had any criminal convictions, had testified in court, had been accused of a crime by a friend or relative, had any relatives involved in law enforcement, knew people involved in criminal defense, had any racial or gender bias, or had been married or divorced. The potential jurors were asked about their age, educational, and employment background, whether they could follow the instructions and give both sides a fair trial, whether they understood the presumption of innocence, whether they would consider the evidence presented, and whether they understood the reasonable doubt standard. They were asked about whether television shows affected their thoughts about criminal sexual conduct, what they imagine

---

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

typical abusers looked like, how they would examine evidence, and whether they had any experience with children lying to them. Defendant's statement that his trial counsels had little information about the jurors was unfounded. Moreover, defendant fails to identify any additional information that his co-counsel should have asked that would uncover pertinent information regarding juror bias or partiality. A defendant's failure to establish the factual predicate of his allegation of ineffective assistance of counsel is fatal to his claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). And where the questioning sufficiently disclosed potential bias or prejudice, any objection to the process would have been futile; therefore, defendant's trial counsels' failure to object did not constitute ineffective assistance of counsel. *Ericksen*, 288 Mich App at 201. No error requiring reversal regarding the trial court's statements and questions during voir dire occurred. Defendant cannot show that he was prejudiced by his counsels' failure to raise futile objections. *Shaw*, 315 Mich App at 672.

We also reject defendant's argument that his case should be remanded to the trial court for an evidentiary hearing to address his claim of ineffective assistance of counsel. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Iannucci*, 314 Mich App 542, 545; 887 NW2d 817 (2016) (quotation marks and citation omitted). Defendant has abandoned this issue because he failed to identify the basis for his request for an evidentiary hearing, discuss what facts an evidentiary hearing would reveal, or cite any supporting authority. Thus, defendant's request for an evidentiary hearing is abandoned, and we decline to consider it further.

### III. SENTENCING

Defendant contends that the trial court improperly assessed 25 points for OV 13 because there was insufficient evidence of three crimes against a person to establish a pattern of felonious activity. We disagree.

"Under the sentencing guidelines, a trial court's findings of fact are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Thompson*, 314 Mich App 703, 708; 887 NW2d 650 (2016). "We review de novo whether the facts as found were adequate to satisfy the statutory scoring conditions." *People v Carlson*, 332 Mich App 663, 666; 958 NW2d 278 (2020).

"[R]eliance on acquitted conduct at sentencing is barred by the Fourteenth Amendment." *Beck*, 504 Mich at 629. "Once acquitted of a crime, it violates due process to sentence the defendant as if he committed that very same crime." *Id*. at 609. There is an important distinction "between acquitted conduct—conduct a jury has determined the prosecutor failed to prove beyond a reasonable doubt—and uncharged conduct—conduct about which the jury has made no finding." *People v Boukhatmi*, ___ Mich App ___, ___; ___ NW3d ___ (Docket No. 363998), slip op at 5. "Acquitted conduct shows up at sentencing in the company of the due-process protection of the presumption of innocence; uncharged conduct does not . . . ." *Beck*, 504 Mich at 621.

> When a jury has made no findings (as with uncharged conduct, for example), no constitutional impediment prevents a sentencing court from punishing the defendant as if he engaged in that conduct using a preponderance-of-the-evidence

standard. But when a jury has specifically determined that the prosecution has not proven beyond a reasonable doubt that a defendant engaged in certain conduct, the defendant continues to be presumed innocent. [*Id.* at 626 (quotation marks and citations omitted).]

To identify which facts and circumstances are prohibited from consideration at sentencing, this Court in *People v Brown*, 339 Mich App 411, 423; 984 NW2d 486 (2021), focused "on what the parties actually disputed at trial." This approach involves "examining the record to determine the ground or grounds upon which a rational jury could have acquitted the defendant." *Id*. "Under *Brown*'s rational-jury standard, we look at the conduct actually disputed at trial to determine the basis of the jury's acquittal and whether the evidence the trial court considered at sentencing was consistent with that acquittal." *Boukhatmi*, ___ Mich App at ___; slip op at 6. "Moreover, if a specific fact or circumstance was relevant to both the acquitted charge and the convicted charge— i.e., if there was an overlap of relevant conduct—then the trial court could consider that fact or circumstance when sentencing on the convicted charge." *Brown*, 339 Mich App at 425.

"OV 13 deals with a 'continuing pattern of criminal behavior.' " *Carlson*, 332 Mich App 669, citing MCL 777.43(1). A score of 25 points is appropriate when "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person . . . ." MCL 777.43(1)(c). "For determining the appropriate points under [OV 13], all crimes within a 5-year period, including the sentencing offense, shall be counted regardless of whether the offense resulted in a conviction." MCL 777.43(2)(a).

Starting with the rational-jury analysis, we note that the trial court found persuasive the victim's jury trial testimony about defendant's conduct. At trial, defendant never admitted touching the victim inappropriately such that all of the alleged acts of sexual touching were at issue at trial. For purposes of defendant's sentence, the jury found that one instance of CSC-II occurred as charged, and the jury rejected the prosecutor's argument that an instance of CSC-I, specifically sexual penetration of the "digital/genital opening," occurred. The other counts of CSC-I relating to the "penile/genital opening" and "oral/ penile," were dismissed after the victim testified that they occurred in Ottawa County.

For the purposes of sentencing, the trial court could not consider the alleged sexual penetration of the "digital/genital opening," because defendant was acquitted of this CSC-I charge. However, the trial court was permitted to consider the several instances of sexual contact, both the charged and uncharged conduct, that constituted CSC-II. The trial court considered three incidents including the event in Cutlerville that was the basis of the CSC-II conviction, "evidence of sexual touching of the victim's genitalia and breasts at Motel-6 in Kent County," and defendant's use of a "vibrator on the victim at the Travelodge in Kent County . . . ." The victim's testimony at trial supports the trial court's conclusion that these three events were sufficient to establish a pattern. The sexual conduct cited by the trial court did not involve the alleged sexual penetration for which defendant was acquitted. Also, these instances did not include the two counts of CSC-I that the victim alleged occurred in Ottawa County and for which charges were dismissed. Therefore, the evidence the trial court considered as a pattern of three or more crimes against the victim at sentencing was consistent with defendant's acquittal. *Boukhatmi*, ___ Mich App at ___; slip op at 6. Under the circumstances, defendant is not entitled to resentencing. *Thompson*, 314 Mich App at 708.

We also reject defendant's contention that the trial court was not permitted to consider uncharged conduct under *Beck*, 504 Mich at 605. The *Beck* Court explicitly distinguished between acquitted conduct that is protected by due process and uncharged conduct which is not. *Beck*, 504 Mich at 621. "When a jury has made no findings (as with uncharged conduct, for example), no constitutional impediment prevents a sentencing court from punishing the defendant as if he engaged in that conduct using a preponderance-of-the-evidence standard." *Id*. at 504 Mich at 626 (quotation marks and citation omitted). Thus, the trial court properly considered the uncharged instances of sexual contact in scoring OV 13 because they were established by a preponderance of the evidence. *Id*.

Affirmed.


/s/ Randy J. Wallace
/s/ Anica Letica
/s/ Kathleen A. Feeney